Ex parte HUMPHREY and others, superintendents of the poor of the county of Monroe.

In the appointment of *superintendents of the poor*, if *no nomination* is made by a majority of the board of suprvisors after an ineffectual attempt for that purpose, and a nomination is made by the judges, the two chambers, when convened to compare their nominations, may proceed to *elect by ballot*, in the same manner as if, on comparison, it was found that there was a *disagreement* in nomination.

February 6.

THIS is a question in the nature of a *quo warranto*, to determine whether certain individuals, appointed *superintendents of the poor* of the county of Monroe in October last, were legally appointed.

The statute directs that the superintendents of the poor shall be appointed by the board of supervisors and the judges of the court of common pleas of the respective counties, in the same manner and at the same time as commissioners of deeds are required by the revised statutes to be appointed, *Laws of 1832, p. 506, § 4.* That manner is as follows : The judges and the supervisors meet in separate chambers, on the day and at the place of the *annual meeting* of the board of supervisors ; when so met, they nominate in separate lists the number of persons to be appointed commissioners of deeds ; they then meet together for the purpose of comparing their respective nominations on the day on which the nominations are made, or on the day following ; if they agree in whole or in part in such nominations, the persons on whom they agree are appointed ; if they disagree in whole or in part, they immediately *proceed to elect by joint ballot* from the persons nominated, so many as are necessary to complete the number of commissioners to be appointed. A certificate is then made out, containing the names of the persons appointed, which is signed by the first or senior judge and by the chairman of the board of supervisors, and filed in the office of the clerk of the county. 1 *R. S.* 109, § 29.

On the first day of the annual meeting of the board of supervisors of the county of Monroe in October, 1833, the board,

consisting of the number of *sixteen*, being all the supervisors of the county, after having appointed a chairman, proceeded to *ballot* for the nomination of commissioners of deeds and superintendents of the poor, and having nominated several commissioners of deeds, continued balloting for superintendents until midnight, when they adjourned. During the balloting for superintendents, *nine* of the supervisors balloted for *nine different candidates* each time ; so that no supervisor balloted twice in succession for the same candidate. The other *seven* supervisors respectively balloted for the same candidates in succession, and repeatedly offered to ballot for such candidates as the *nine* supervisors or any part of them might designate, in order that a nomination of superintendents might be made by the board of supervisors ; but the nine refused to enter into any agreement by which the nomination could be made by a majority, and none was made unless the concurrence of the seven supervisors could be considered a nomination. On the following day, the judges and supervisors met to compare their nominations, and elected a chairman to preside. Finding their nominations for commissioners not to agree, they proceeded to elect commissioners by joint ballot. A motion was then made by one of the *seven* supervisors to proceed to elect by joint ballot the superintendents of the poor of the county, which motion was carried by a majority of the judges and supervisors, the *nine* supervisors voting against the motion, and entering their protest upon the journal of the proceedings, alleging that superintendents of the poor could not legally be elected by *joint ballot* until after a nomination by the board of supervisors, and that the board had not had time to make such nomination. The judges and the *seven* supervisors, being a majority of the whole number in joint meeting, proceeded to elect superintendents by ballot, and on counting the ballots, it was found that H. L. Stevens, S. P. Gould and J. Medbury (who had been previously nominated by the judges) were elected. A certificate was then made of the appointment of the said individuals as superintendents, signed by the proper officers and filed. A case containing the above facts was submitted by the superintendents of the former year who claim to hold over, and the superintendents appointed in

ALBANY,
Feb. 1834.

Ex parte
Humphrey.

ALBANY,
Feb. 1834.

Ex parte
Humphrey.

the manner above specified, to this court for their decision thereon.

*By the Court,* SAVAGE, Ch. J.    I am of opinion that the individuals elected by joint ballot were legally appointed superintendents of the poor.   It must be admitted that the conduct of the majority of the board of supervisors was fraudulent. The law made it their duty to nominate.  They pretended that they could not agree ; and that it was mere pretence, appears from the case submitted to us.   I therefore assume the fact that the supervisors *refused* to nominate.  The judges did nominate, and there being no nomination by the supervisors of the persons nominated by the judges, the event had happened which made a joint ballot necessary.   This is denied by the counsel for the superintendents who claim to hold over, because, he insists, a nomination is necessary by the supervisors as well as by the judges.   This is a mode of ascertaining whether the two boards agree in the appointment of the same persons.   If neither board should nominate, there could be no appointment ; if both nominate and agree, the appointment is *ipso facto* made ; if they disagree, then a joint ballot decides the matter.   In this case, all the persons necessary to an appointment were present ; there was no want of jurisdiction ; it is a mere question of regularity ; the statute is directory to each board.   There was one nomination made, and the two boards did not agree ; a joint ballot was therefore proper.   It cannot be in the power of one board thus to violate their duty and be screened from punishment.   Had they refused to meet according to law, they might have been indicted ; they therefore met professedly to perform their duty, but in reality to violate the duty which they were sworn to perform.   Shall they be permitted to do this ?   Had they openly refused to nominate, such refusal, I think, in charity to the supervisors, should be considered a disagreement to the nomination of the judges. So if they, in point of fact, had been unable to nominate, the result should be the same.   The present inability was either voluntary or involuntary, and in either case should be considered a disagreement in nominations, rendering a joint ballot necessary and proper.