## BECK *v.* HANSCOM.

By the charter of the city of Portsmouth, it was provided that the election of a city marshal should be vested in the city council, who should elect him annually. *Held*, in the absence of any provision to that effect, that the city marshal did not hold his office after the expiration of the year for which he was elected, and until another should be chosen and qualified.

The charter of Portsmouth provided that the board of aldermen and the common council, in their joint capacity, should be denominated the city council, and that a majority of each board including the city council should constitute a quorum for the transaction of business. The board of aldermen and the common council separately voted to meet in convention on the 12th of June, for the choice of city officers, including the city marshal, but when the time arrived, only a minority of the board of aldermen appeared. The common council and these aldermen, twenty-three persons being present, and constituting a majority of both boards, in their capacity as the city council, proceeded to elect officers, and made choice of the respondent as city marshal, by a majority of the votes present. Upon a petition for a mandamus, it was *held* that after the board of aldermen had agreed upon a day for meeting in convention, it was not necessary that a majority of them should be present, in order to made the elections by the city council legal, and the petition was dismissed.

PETITION FOR A MANDAMUS. The petitioner, Andrew J. Beck of Portsmouth, describing himself as city marshal of Portsmouth, alleged that at a meeting of the city council, held on the 27th day of May, 1853, a majority of the board of aldermen, and a majority of the common council being present and assembled in convention in the council chamber, he was duly elected on joint ballot by a major vote of the convention, and was declared by the mayor of the city

to be duly elected city marshal for the ensuing year, and until another should be chosen and qualified in his stead, the city council having failed to elect a city marshal in the month of April in that year; that he accepted the office, and was duly qualified and gave bonds; that he entered upon the discharge of the duties of his office, and took possession of the city property as pertaining to the office; that there had been no legal choice of any person to the office of city marshal in his stead, or since his election; that Oliver Hanscom of Portsmouth now claims to hold and exercise the office of city marshal, and has in his possession and custody one book of records, two cockades, one baton, fifty badges for police, and several keys of the lockups of the city, all the property of the city, and appertaining to the office of city marshal, which he wrongfully detains and refuses to deliver to the petitioner, who ought to have the custody thereof.

The petitioner then prayed that Hanscom should be ordered to deliver to him the articles above named, and that a writ of mandamus should issue accordingly.

The petition was filed with the clerk on the 7th of November, 1854, and at the December term following the respondent filed his return or answer, showing sufficient cause, as he alleged, why a writ of mandamus should not issue. In his answer he stated that he was informed and believed that the petitioner was elected city marshal on the 27th day of May, 1853, but he does not know nor believe that he was elected or declared to be elected for the year ensuing, and until another should be elected and qualified in his stead, and he denies this to be true. He believes Beck accepted the office, and was duly qualified and gave bond for the faithful discharge of his duties for the then current year only, which year has long since elapsed. He admits that Beck acted in the office from the time of his election until the 13th day of June, 1854, and during that time had possession of the city property, but he denies that by force of

law, or by any election, Beck was entitled to hold the office after the first day of April, 1854, or that he is now entitled to it. He states that in the month of April last, and from that time until the 12th of June last, the city council failed to elect any person to the office of city marshal, and it became vacant, and that on the 20th day of April last the common council resolved, if the aldermen concur, that the common council would go into convention on the evening of Thursday, the 27th day of April, for the choice of city officers, including the office of city marshal, but that the board of aldermen laid the resolution on the table. On the 27th of April, a motion was made in the board of aldermen that the resolution be taken from the table, but it did not prevail. It was taken up on the first day of June, and amended by striking out the words " April 27th, at eight o'clock," and inserting the words " June 8th, at half past eight o'clock." It passed as amended, and on the same day was concurred in by the common council, and on the 8th day of June the board of aldermen voted that the convention appointed for that evening by such concurrent vote be postponed until the evening of the 12th of June, and on the same day the vote was concurred in by the common council. On the 12th of June the common council assembled at the time and place appointed, and notified the board of aldermen that they were ready to meet them in convention for the choice of city officers, and the mayor and three of the aldermen assembled in their room at the same time for the sole purpose of going into convention, but the remaining four aldermen neglected and refused to appear. The mayor and the aldermen who appeared met the common council in convention, and there were there present the mayor and a majority of all the members of the city council, including both aldermen and common councilmen. They balloted for a city marshal, and twenty-three votes were cast, of which Hanscom had fourteen, and was declared duly elected. He accepted the office, and on the 13th of

June was sworn, and on the 22d of June gave bond in the usual form prescribed by the board of aldermen, and delivered it to the city clerk, by whom it was laid before the board of aldermen, who laid it on the table, and have since retained it upon the files without any objection.

Upon application made by the respondent to Beck, the latter delivered to him the articles above mentioned, and the respondent has retained and used them, and from that time Beck abstained from acting as city marshal, the duties of which office have been performed by the respondent. He alleges that he is entitled to hold the office by force of the election aforesaid, and that Beck is not so entitled.

*Wells & Bacon*, for the petitioner.

Beck was duly elected and entitled to hold the office until another person was chosen.

The objection that his official authority expired after the first of April, is not sound. If we take the three sections of the charter, sections 6, 23 and 24, they show that the legislature intended that the elected officers should hold until others should be chosen. The 6th section enacts that the officers to be chosen by the people shall be chosen by ballot, on the second Tuesday of March, for one year, and shall hold their offices until others are chosen and qualified in their stead. Similar language is used in section 23. By the 24th section, the city council shall, also, in the month of April, annually, elect a city treasurer, and all other subordinate officers who are not chosen by the inhabitants or appointed by the mayor and aldermen, and the term of time for which the latter shall hold not being stated, shows clearly the intention of the legislature, that all officers to be chosen under that charter should hold until others should be chosen and qualified in their stead. The corporation so regarded it, for the respondent concedes in his answer that Beck held and acted in said office, without objection, until the 13th day of June, 1854. By an amendment to the charter, made in the month

of June, 1850, it was provided that if the city council shall fail to elect to any office in the month of April, then they shall proceed to elect to the office as soon thereafter as may be, clearly extending the right to hold until others are chosen and qualified.

The common law gives to Beck the rights which we claim as resulting from the charter, even though our inferences from the charter are incorrect. *South Bay Meadow Dam Co.* v. *Gray*, 30 Maine Rep. 347; *People* v. *Jones*, 17 Wend. 81; *Currier* v. *Mutual Insurance Soc.* 4 Hill, 315; *People* v. *Runkel*, 9 Johns. 147; 10 Mod. 146; Str. 625; 2 Kent's Com. 292; Ang. & Am. on Corp. 106, 7, 8.

When a convention is to be formed of the two branches of the city council, a message shall be sent from the common council to the board of aldermen, giving notice when the common council will be ready to meet the board of aldermen in convention, and state the purposes for which the convention is to assemble. Joint Rules, § 1. By the 15th section of the charter, the city council may make, alter, amend or repeal joint rules and orders for the orderly management of business and for the government of the two bodies in convention.

The resolution of the common council of the 20th of April, 1854, proposing to go into convention for the purpose of elections on the 27th of April, at 8 o'clock, was in accordance with the law, but the same being laid upon the table, and suffered to remain beyond the time proposed, the proposition was at an end, and the after act, on the 1st of June, 1854, of taking up that matter by the casting vote of the mayor, was nothing else than a new proposition on the part of the board of aldermen to fix upon a time to go into the election of city officers, which they had no authority to do. This appears by the joint rules.

The elections of the 12th of June were illegal. They are so by the charter. The government of the city is vested in a mayor, seven aldermen, and a common council of twen-

ty-one, which boards, in their joint capacity, are denomin-
ated the city council.   A majority of each board constitutes
a quorum for the transaction of business.   Charter, § 1.  By
the 12th section, the mayor and aldermen compose one
board, but the mayor has the casting vote only.  Section 11.
By the 14th section the  common council sit and act as one
body, distinct from the mayor and aldermen, except where
the two bodies, (not a part of them,) are required to meet in
convention.

By the 15th section, all the powers, &c., are vested in the
city council, composed as provided in the second section,
that is, by a union of a majority of the two boards, formed
in pursuance of the joint rules.   And the powers so vested
shall  be exercised by concurrent vote, each board having a
negative on the other.   See sections 2 and 3 of the amend-
ment.

By the second section, a majority of the city council shall
constitute a quorum, and by the second section of the char-
ter a majority of each board is required to constitute the
city council, and in order to secure the attendance of the
required majority, the members of each  board who are pre-
sent may compel the attendance of absentees.   We think,
therefore, it is clear that by the charter and amendment, the
alleged convention of the 12th of June was illegal, and the
elections invalid.

If the theory of the  respondent is correct, and the con-
vention of the 12th of June was legal, there might have
been at the very time the elections were progressing, a legal
meeting of the board of aldermen in their. room, as a ma-
jority of the board were not connected with the assumed
convention.

Fifteen of the common  council make a majority of both
full boards.   If three can form the union so as to constitute
a legal convention, then one can do so ; and perhaps it will
be argued that when the time is previously fixed, the com-
mon council may resolve itself into a city council, and pro-

ceed with the elections, though none of the aldermen attended. This would, by force of the amendment constituting a majority of the city council a quorum, practically vest the election in the common council. The case would then be like that of a legislative convention, where it had been previously agreed to go into the elections at a given time.

If the acts of incorporation were silent as to the majority vote, the law would require what we say the charter requires, viz, a majority of each integral part in order to form a legal convention. Ang. & A. on Corp. 463, 464 to 469; *King* v. *Miller*, 6 Term Rep. 280 ; 2 Kent, 292. All the integral parts of a corporation necessary to do an act must remain present until the act is consummated. *Ex parte Rogers*, 7 Cow. 526, 530, n.

*Hatch*, for the defendant.

The controversy is as to the possession and right to an office, and we contend that the proceeding should not be by petition for a mandamus. The remedy for the petitioner is only by *quo warranto*. 3 Johns. Cas. 79 ; 5 Hill, 616. The return here is conclusive. After it is settled upon a *quo warranto* that a party has a right to an office, then a mandamus issues to put him in possession of it.

We think, however, that Beck is not the city marshal, even if the defendant was not legally elected. The petitioner voluntarily resigned the office to the defendant, and that precludes him from setting up any claim to it.

The main question is whether the defendant was lawfully elected, and this depends on the determination of the question, what constitutes a quorum of the city council? This is to be answered only by determining what is the true construction of the charter. We say that a majority of each constituent body need not be present. *White* v. *The People*, 26 Wend. 633. This is the result that must be reached, upon any reasonable construction of the second section of the amendments of the charter. Where officers were to be

chosen by joint ballot, after a separate nomination in each of the constituent bodies, and one of these bodies fraudulently refused to make the nomination, the joint body may elect as though a nomination had been made. *Ex parte Humphrey*, 10 Wend. 614. In the case of *Whiteside* v. *The People*, it was decided that where a removal and election of an officer could be made by the joint vote of two boards, the election and removal may be made by one of the constituent bodies being a majority of the whole, though the other body retire and refuse to act. The rule in England seems to be, that in joint meetings a majority of each component body must be present. Ang. & A. on Corp. 400. But whether a majority of each constituent must remain after the joint meeting is once formed, is not so clearly settled. Ib. 403.

In support of the position that the petitioner can proceed only by *quo warranto*, we refer to *The People* v. *The Corp. of New York*, 3 Johns. Cas. 79; *The People* v. *Stevens*, 5 Hill, 616; *The State* v. *Bruce*, Const. Rep. (S. C.) 165; *St. Louis Co. Ct.* v. *Sparks*, 10 Misso. Rep. 165; *Regina* v. *The Guardians, &c.*, 5 Eng. L. & Eq. 361; 3 Burrow, 1452; 2 Toml. L. Dict. 515; *Strong's Case*, 20 Pick. 484, 496. This case, although it modifies somewhat the decision in *The People* v. *Whitehouse*, does not affect it on this point.

We say, also, that the return is conclusive. 3 Bl. Com. 111; *King* v. *Williams*, 8 B. & C. 681; *Rex* v. *Penrice*, Strange, 1235; *Howard* v. *Gage*, 6 Mass. Rep. 462.

GILCHRIST, C. J. The petitioner's case is, that there having been no election of city marshal in the month of April, 1853, on the 27th of May of that year, a majority of the board of aldermen, and a majority of the common council, being present in convention, he was elected by a major vote of the convention to that office for the ensuing year, and until another should be chosen and qualified in his stead.

The return or answer to the petition admits that the elec-

tion was made as alleged, but denies that it was for the year ensuing, and until another should be chosen and qualified, and alleges that the current year, for which only Beck was elected, has expired, and denies that he was entitled to hold the office after the first day of April, 1854.

In order to determine whether Beck could hold the office until another person should be chosen and qualified, it is necessary in the first place, to examine the provisions of the charter.

By the sixth section of that instrument, all city, ward, and town officers who are chosen by the people, are to hold their offices for one year, and until others are chosen.

The 23d section provides that on the fourth Tuesday of March, the city council shall elect in convention, by joint ballot, a city clerk, who shall hold his office for one year, and until another shall be chosen and qualified.

The 24th section merely provides for the annual election of a city treasurer.

From these sections no inference can be made that the city marshal is to hold his office until another is chosen and qualified.

The 13th section gives the mayor and aldermen the power to appoint a city marshal, but says nothing about his term of office.

The first section of the amendments takes from the mayor and aldermen the power of appointing the city marshal and vests it in the city council, who are to elect him, with other officers, in the month of April, annually, in convention, and by joint ballot. If they fail to elect in the month of April, they shall proceed to elect " as soon thereafter as may be." Nothing is said about his holding his office until another is chosen and qualified, and we find nothing in the charter or amendments which authorizes this conclusion. The charter and amendments provide, as to certain officers designated therein, that they shall hold their offices until others shall be chosen and qualified, but in relation to certain other

officers this provision is omitted. All the officers enumer-ated are not placed on the same ground by the charter, when if it had been intended to deal with all of them alike, it would have been an easy matter to express that intention. But the court have no authority to speak where the charter is silent; and if we should give a judicial construction to the charter, by force of which the city marshal should hold his office until another should be chosen and qualified, we should, in our opinion, *make* the law, instead of expound-ing it.

In the case of *The People* v. *Runkin*, 9 Johns. 147, it was held that the trustees of a religious society who go out of office at the end of the year, hold over until others are ap-pointed. In the case of the *Trustees of Vernon Society* v. *Hills*, 6 Cow. 23, it is intimated that corporate officers may hold over until others are elected in their stead. But in the case of *Phillips* v. *Wickham*, 1 Paige, 595, Chancellor *Wal-worth* said, " I am not aware of any general principle of the common law, which authorizes all civil or corporate officers to hold over after the expiration of the time for which they were elected until their places are supplied by others; and the numerous statutes, both here and in England, giving such authority in express terms, seem wholly inconsistent with any such common law principles." But without in-vestigating this question, we think it is sufficient that the charter makes no provision for the continuance of the city marshal in office after the expiration of the year for which he was elected.

Such being the views of the court, it would seem to be unnecessary to determine any other question in the case; for if Beck's term of office expired with the current year he cannot maintain this petition, as it is only on the ground that he is legally the city marshal that he can ask the court to interfere. But as the other question which has been ar-gued is one of much interest to the parties, we have taken it into consideration.

Beck v. Hanscom.

It appears that on the 12th day of June, 1854, the common counsel assembled and notified the board of aldermen that they were ready to meet them in convention for the choice of city officers. The mayor and three only of the aldermen appeared, and went into convention with the common council, there being present the mayor and a majority of all the members of the city council, including both aldermen and common councilmen, the two boards being twenty-eight in number, and twenty-three votes having been cast. Of these votes the defendant had fourteen, and was declared to be duly elected.

Now the question upon this state of facts is, whether, as there was not a majority of the board of aldermen present, the city council was legally organized.

The second section of the charter provides that the government of the city shall be vested in a mayor, ". one council of seven, to be denominated the board of aldermen, and one council of twenty-one, to be denominated the common council, which boards shall, in their joint capacity, be denominated the city council. A majority of each board shall constitute a quorum for the transaction of business." The 14th section enacts that " the persons chosen and qualified as members of the common council shall sit and act together as one body, distinct from the mayor and aldermen, except when the two bodies are required to meet in convention."

The second section of the amendments of the charter provides that " a majority of the city council shall constitute a quorum for proceeding in elections," &c. The third section enacts that at the meetings " of the aldermen, common council, and of the city council in convention, if it shall appear that a majority of either of said bodies is not present," the members present may compel the attendance of the absentees, &c.

These are all the provisions we have found bearing upon the question now before us.

Now on the eighth day of June the board of aldermen fixed on the twelfth of June as the time for going into convention for the choice of city officers. Their vote was concurred in by the common council, and when the time arrived, nothing remained to be done by either body but to go into convention in pursuance of their respective votes. The charter provides that a majority of each board shall constitute a quorum for the transaction of business. But after the board of aldermen had voted, there was no business to be transacted. As a legislative and administrative body they had agreed to do a certain thing. They had then only to do what they had agreed to do. The neglect of some of their number to act in pursuance of their vote could not rescind their vote and annul their previous proceedings. If, after the vote had been adopted, any other act of a legislative character had been necessary before going into convention, or if the mere going into convention could be regarded as a legislative act, then it must have been done by a majority. But if, after a vote had been legally passed by a competent board, one member could render nugatory the act of the board to which he belonged, he would possess a degree of legislative power which the charter could never have intended to confer upon him. These considerations, we think, are an answer to the objection that a majority of the board of aldermen was not present in the convention.

If it were considered desirable to adopt a rule of extreme strictness in relation to the constitution of the city council, we should not be without precedents for so doing. In the case of *St. Mary's Church in Philadelphia,* 7 S. & Rawle, 517, *Duncan,* J., says, " when legally assembled, the majority of voices govern, but every integral part must be present at a corporate assembly, by a majority, at least, of its proper members, though the major part of all present, when assembled, are competent to do a corporate act." In the case of the *King* v. *Miller,* 6 Term Rep. 278, Lord *Kenyon* said, " this proposition seems to be now clearly established that

where there is a definite body in a corporation, a majority of that definite body must not only exist at the time when any act is to be done by them, but a majority of that body must attend the assembly where such act is done." *Grose*, J., says, "a majority of each integral part of the corporation must meet in order to make a good elective assembly, though an action by a majority of those assembled, is valid." In the case of the *King* v. *Williams*, 2 M. & S. 141, the mayor, burgesses and commonalty were to elect a mayor annually. At a meeting a person was proposed and seconded as a candidate, but the mayor withdrew before the candidate was declared duly elected, and it was held that the election was void, for the absence of the mayor, an integral part of the corporation.

The present question may be very shortly stated. The corporation of Portsmouth consists of the mayor, the aldermen, and the common council. These bodies, or boards, constitute the city council, when in convention. A majority of each board constitutes a quorum for the transaction of business. The board of aldermen regularly voted to meet the common council in convention, but when the time arrived a majority did not appear. Is the actual meeting in convention a " business " which requires the presence of a quorum, or is a quorum necessary for such business only as is transacted by the aldermen in their separate capacity, when they meet to discharge their appropriate duties? After a legal vote to meet in convention, must a quorum actually meet?

There are decisions which modify the stringent rule laid down in the English cases. In the case of *Whiteside* v. *The People*, 26 Wend. 634, the appointment to office was vested in two bodies, each of which was separately to assemble and make a nomination. Both bodies were then to meet, and if the nominations agreed, the person nominated was to be appointed, but if not, the two bodies were to elect by joint ballot. The two bodies met, and one of them de-

clared it had made a nomination, but the other made none, and refused to act, and left the meeting. It was held that the appointment of the officer by a majority of the whole number of both bodies, was valid. In the case of *Ex parte Humphrey*, 10 Wend. 612, the judges of the court of common pleas and the supervisors were separately to nominate superintendents of the poor, and then to meet for the purpose of comparing the nominations, and if they disagreed they were to elect by joint ballot from the persons nominated. The supervisors met, but refused to make a nomination. The two bodies then met, and a majority of the whole number, in joint meeting, elected superintendents by ballot, and it was held that the election was valid. *Savage*, C. J., said it could not be in the power of one board thus to violate their duty.

We are disposed to adopt such views of the law, and to give such a construction to the charter, as will best enable the government of the city to proceed with regularity. To hold that in the circumstances of this case, the omission of the aldermen to go into convention could put a stop to the legislative action of the city council, would be, we think, to offer a premium for a neglect of duty. This controversy had its origin, doubtless, in hostile feelings among the parties to it, and the election of the city marshal was merely an occasion for the manifestation of them. We are not called upon to suppose that either party acted upon any other grounds than such as they supposed were legal. But we think the views of the respondent are sound, for we can imagine no case where, after every preliminary step has been properly taken, the mere neglect of one of the constituent bodies to carry its previous vote into effect, ought to have the power of hindering the other bodies from performing the duties required by the charter. The judgment of the court, therefore, is, that the city council must be considered as duly organized, and that the respondent was legally elected to the office of city marshal.

*Petition dismissed.*