GILDERSLEEVE *a.* THE BOARD OF EDUCATION.

*New York Common Pleas ; General Term, July,* 1863.

COMMON SCHOOLS IN NEW YORK CITY.—REMOVAL OF TEACHER.—
SCHOOL TRUSTEES.—NOTICE OF MEETINGS.—RESIGNATION OF
TRUSTEES.—REMOVAL.—POWER OF MAJORITY.—PUBLIC AND
PRIVATE TRUST.—CORPORATION.

A certificate, issued under the Laws of 1851, ch. 386, § 11,—which makes it the duty of the city superintendent, under general regulations of the Board of Education, to examine into the qualifications of persons proposed as teachers of common schools in the city of New York, and to grant certificates,—need only specify in which class of schools the person is qualified to teach.

And where, under this statute, and a by-law of the Board of Education which required that the certificate given should express the grade of the teacher, the superintendent gave a certificate expressing the grade, and that the teacher was qualified as first assistant of a grammar-school ;—*Held,* in the absence of evidence of any further regulation of the board, that the teacher might lawfully serve as principal of the primary department of a grammar-school.

The power of the board of trustees to employ teachers under the same statute, coupled with the general authority to conduct and manage the schools, necessarily implies the right to remove them, especially under a by-law of the Board of Education regulating the proceedings on such removal.

The power of the city superintendent, under the same statute, to annul the certificate given to any teacher, is distinct from the power of the trustees to remove a teacher.

The members of a body intrusted with the management of a matter of public concern,—*e. g.,* a board of school trustees,—are deemed to have notice of a general or stated meeting held pursuant to the by-laws of the body.

Under section 10, subd. 7, of the same statute, which authorizes the trustees by the vote of a majority to declare vacant the seat of any trustee who shall refuse to attend three stated meetings, the tender by a trustee of his resignation, with its acceptance by a majority, renders his seat vacant.

The office of a trustee of common schools in the city and county of New York, becomes vacated by the removal of the incumbent from the county.

In case of a vacancy in the board of trustees of common schools in New York city, the remaining members of the board are authorized to continue the performance of the duties of the board without waiting till the vacancy is filled, inasmuch as the power of appointment, or of nominating for appointment, is not vested exclusively in the board of trustees.

When a general power is conferred upon two or more bodies, they must all come together for consultation and deliberation ; though when they have done so, the vote of the majority of the persons present controls, even though one of the bodies should leave before the vote is taken.

Gildersleeve *a.* The Board of Education.

The provision of 2 Rev. Stat., 555, § 27, that where a duty or authority is confided by law to three or more persons, a majority of such body may act upon a meeting of all, is applicable to the boards of trustees of common schools in the city of New York.

This provision, in its application to bodies intrusted with the management of matters of public concern, is to be thus interpreted : that when all the members are notified that a meeting is to be held, and a majority of the whole number attends, the majority so attending may organize and legally proceed to the transaction of business. As respects those who neglect or refuse to attend, it is the same as if they had attended and dissented from the act of those who were present.

Where, in matters of a private nature, a power is to be exercised by certain designated individuals, all must concur in its exercise, and the death, absence, or disability of any one of them, will not make the execution of the power by the remainder of them valid.

But where powers, to be exercised as a continuous public trust or duty, are confided to designated persons, and some die or become disqualified, the others may discharge the trust or perform the duty, provided there is a sufficient number to confer together, deliberate, and, in view of a possibility of division of opinion, to decide upon the course to be adopted.

If such a power or duty is confided to two only, and one dies or becomes incapable of discharging it, the other cannot act alone, unless, to prevent a failure of justice, it is indispensable.

The Board of Education of the city and county of New York may be sued : possessing the powers and privileges of a corporation, it is subject to the obligations incident to such powers.

Appeal from a judgment dismissing the complaint.

This action was brought by Laura H. Gildersleeve against the Board of Education of the city and county of New York to recover $233.33, her salary, for the term of seven months, as a teacher in one of the public schools of the city of New York, after an alleged discharge from her position. The facts sufficiently appear from the opinion.

*Calvin M. Northrup,* for the appellant.—I. The meeting of 20th August, 1858, was illegal. 1. Because all of the members of the board of trustees were not present; and those who were not present, were not notified of the meeting. (*Code on Pub. Instruction,* 95, 244; 2 *Rev. Stat.,* 555, § 27; Horton *a.* Garrison, 23 *Barb.,* 176; Lee *a.* Parry, 4 *Den.,* 125; Doughty *a.* Hope, 3 *Ib.,* 594; 1 *N. Y.* (1 *Comst.*), 79; People *on rel.* Mygatt *a.* Supervisors of Chenango, 11 *N. Y.* (1 *Kern.*), 563; Fitch *a.* Commissioners of Kirkland, 22 *Wend.,* 132; Downing *a.* Rugar, 21 *Ib.,* 178; Whitford *a.* Scott, 14 *How. Pr.,* 302;

Gildersleeve *a.* The Board of Education.

Powell *a.* Tuttle, 3 *N. Y.* (3 *Comst.*), 396; Olmsted *a.* Elder, 5 *N. Y.* (1 *Seld.*), 144; 16 *Maine*, 185; *Code, Pub. Instr.*, 28, 243.) 2. There being a vacancy by the resignation of Bellamy, there was no legal board, and they could do no act except join with the other school officers of the ward in nominating a person to fill the vacancy. (*Code, Pub. Instr.*, 243; Pell *a.* Ullmar, 21 *Barb.*, 500; 1 *Barn. & Ald.*, 608; 3 *Madd.*, ch. 361.)

II. The trustees of a school district have no power to dismiss a teacher holding the proper certificate, without cause and against his consent, before the expiration of the contract (Finch *a.* Cleveland, 10 *Barb.*, 290; 2 *Kent's Com.* [8th ed.], 283, *n.;* Murdock *a.* Phillips Academy, 12 *Pick.*, 244), or his license is revoked by the city superintendent. (*Davies' Laws*, 1052, § 11.) No such power is given to the trustees. (*Ib.*, 1050, § 10.)

III. The referee is in error in supposing that 2 Rev. Stat., 555, § 27, does not apply to school trustees. (Whitford *a.* Scott, 14 *How. Pr.*, 302; Lee *a.* Parry, 4 *Den.*, 125.) He is in error, likewise, in holding that the statute, making it the duty of the trustees to meet at stated times, waives the necessity of notice. Canvassers of election are also required to meet statedly; but it is well settled by the cases already cited, that they must all be present, or notified to be present. No notice of the meeting having been given, six members could not constitute a quorum by the very terms of the by-laws, as well as by the statute; there is no general rule which makes a majority a quorum. (Downing *a.* Rugar, 21 *Wend.*, 179.) The report of the referee should be set aside, because it does not find the facts proven.

IV. The school law of this city is but an extension of the State system to the city; hence the decisions of the courts of the State will be directly in point.

*Abraham R. Lawrence, Jr.*, for the respondents.—I. Under the pleadings, it was necessary for the appellant to show that she was legally appointed to the position which she occupied. The rule, that proof that a person acts as and claims to be an officer, is *prima-facie* evidence that he is such officer, does not apply to actions in which that person is himself a party, and claims to recover fees, or sets up a right of property as the incumbent of the office. (People *a.* Hopson, 1 *Den.*, 574; Parker *a.* Baker, 8 *Paige*, 428; Green *a.* Burke, 23 *Wend.*, 490;

People *on rel.* Morton *a.* Tieman, 30 *Barb.*, 193 ; S. C., 8 *Abbotts' Pr.*, 359 ; Riddle *a.* County of Bedford, 7 *S. & R.*, 386 ; Keyser *a.* McKimmin, 2 *Rawle*, 139.) The respondents are mere disbursing officers in reference to the payment of the salaries named in the pay-rolls of each ward ; the parties who contract with and employ teachers, are the trustees of common schools in the various wards (*Davies' Laws*, 1050, § 10) ; the respondents are, therefore, not estopped from denying the validity of the appellant's appointment.

II. It was necessary for the appellant to prove that during the period for which she claimed compensation she had the requisite license, and was qualified to teach as principal of the primary department. The certificate of the appellant does not express the position for which the appellant claims to be qualified, nor that she is qualified to teach in the capacity of principal.

III. If the appellant ever was legally appointed to the office in question, she was legally removed. The meeting of the 20th August, 1858, was a legal meeting of the board of trustees, and the proceedings at such meeting in relation to the removal of the appellant were valid. It is only necessary to give validity to a resolution of a body of *quasi* legislative powers, such as the board of trustees, that it should be passed at a regular meeting of such board, at which a quorum was present (2 *Bouv.*, 418) ; and the rule is, that where an act is to be done by a definite number of persons, a majority of such number will constitute a quorum (*Angell & Ames*, 568, § 501 ; *Exp.* Willcocks, 7 *Cow.*, 402) ; and that where a majority of the body have met, a majority of such majority may decide. (*Exp.* Willcocks, 7 *Cow.*, 402 ; Rex *a.* Bellringer, 4 *T. R.*, 410 ; Rex *a.* Miller, 6 *Ib.*, 268 ; Rex *a.* Munday, *Cowp.*, 538 ; Blackie *a.* Blizard, 9 *Barn. & Cress.*, 851.) These rules were strictly complied with ; the resolution removing the appellant was passed by a majority of the quorum, and also by a majority of the whole board. That no notice was given by the secretary of the holding of the meeting, is unimportant. The trustees, by appointing stated meetings, were, in fact, notified by their own act, in making such appointment ; every member of a *quasi* legislative assembly is bound to take notice of the regular meetings of the board. (*Cushing's Legislative Assemblies*, § 267.)

The section of the Revised Statutes, cited by the appellant's counsel, refers to ministerial or executive officers.

IV. The respondents never contracted with, hired, or employed the appellant. (*Davies' Laws*, 1050, § 10; *Ib.*, 1047, § 8.)

V. The name of the appellant having been omitted from the pay-rolls prepared by the school trustees, the respondents are not liable, even if the appellant was illegally removed; her remedy is against the board of school trustees.

VI. In Hill *a.* Supervisors of Livingston, 12 *N. Y.* (2 *Kern.* 52), the remark of Allen, J., on which the appellant's counsel relics, was entirely *obiter*, and was not expressly assented to by the rest of the court; besides, the point was not raised that supervisors could not be sued at all. (*Ib.*, 54.) That the supervisors cannot be sued, has been often decided. (Brady *a.* Supervisors of New York, 10 *N. Y.* (6 *Seld.*), 260; S. C., 2 *Sandf.*, 460; Boyce *a.* Supervisors of Cayuga, 20 *Barb.*, 294.) The reasoning in these cases is equally forcible to show that no action can be maintained by the appellant against the respondents herein. (See also Gardner *a.* Board of Health, 10 *N. Y.* (6 *Seld.*), 409; S. C., 4 *Sandf.*, 153.)

DALY, F. J.—The certificate given by the city superintendent to the plaintiff was in the form prescribed by the Board of Education. It was, that she was qualified to teach as first assistant of a grammar-school, and that she was licensed as a teacher of grade A.

Upon the certificate, she was appointed by the board of school trustees of the twelfth ward principal of the primary department of grammar-school No. 37 in that ward, and discharged the duties thereof for the period of two years and eight months; that is, from the 1st of January, 1856, to the 17th September, 1858; her salary being regularly paid to her without objection up to the 17th September, 1858, when another person was installed as principal in her place. The present action is brought to recover her salary for the seven months which elapsed from the 17th of September, 1858, to the commencement of the action, during which period, though willing, she has not been allowed to render any service, and another person has been acting as principal. It is objected, first, that she was never legally

appointed principal, as the certificate given her by the city superintendent did not state that she was qualified for that position. All that the statute requires is, that the certificate shall specify in which class of schools and in what capacity the person is qualified to teach. (*Davies' Laws*, relating to the city of New York, p. 1052, § 11, subd. 2.) Her certificate fully complies with this requisition. It declares that she is qualified to teach a common or grammar school, and it expresses in what capacity, that is, as the first assistant. The Board of Education have prescribed the form of the certificate, and declared that it shall always express the grade of the teacher, and the position for which he is qualified. (*General Rules and Regulations of the Board of Education*, Art. VIII., § 3.) The certificate complies with this regulation also, as it expresses her grade and the position for which she is qualified. She was appointed by the trustees as principal of the primary department of a grammar-school, and I find nothing in the statute, nor in the portion of the general regulations of the Board of Education which have been given in evidence, to show that the trustees may not appoint as principal of a primary department of a grammar-school a person qualified to teach as first assistant. The only restriction in the regulations of the Board of Education, so far as we are informed of them by the evidence, is the provision declaring that no teacher, except of grade A, shall be employed as principal or vice-principal in a grammar school, or as principal in any primary school. The certificate of the plaintiff shows that she is of that grade; and, for all that we know, a person qualified to teach as first assistant in a grammar-school may be fully competent to act as principal of the primary department of such a school. The statute declares that the board of trustees of each ward shall have the power, under such general rules and regulations as the Board of Education may adopt, to contract with and employ teachers, and to conduct and manage the schools (*Davies' Laws*, p. 1050); and under such a general authority as this, we must conclude that the board of trustees had the right to employ, as principal of the primary department of a grammar-school, a person certified as competent to teach in the capacity of first assistant of such a school, unless there was some regulation of the Board of Education to the contrary; and and if there was, it was incumbent on the defendants to show

it. Our attention is called to subdivision 2 of section 3 of article XVIII. of the regulations of the Board of Education, in which it is declared that no person shall be entitled to receive salary as a teacher of a common school, without a certificate in the form prescribed by the board. The short answer to which is, that the plaintiff had such a certificate, setting forth her grade as a teacher, and the position which she was qualified to fill.

The plaintiff, then, having been legally appointed and in the full discharge of her duties up to the 1st of September, 1858, the next question that arises is, whether she has been legally removed.

I entertain no doubt of the power of the board of trustees to remove her.

The power to employ teachers necessarily implies the right to remove them, especially when, as in this case, it is coupled with a general authority to conduct and manage the schools.

The rules or regulations of the Board of Education are framed with especial reference to the exercise of such an authority, inasmuch as the trustees are required, upon dismissing a teacher, to file with the clerk of the Board of Education a copy of the resolution directing it, and to notify the teacher in writing of the cause of the dismissal; and the teacher is allowed twenty days, after the service of this notice, to appeal to the Board of Education, and if that body decide that there was no good cause for dismissal, the teacher is restored to the former position, and is to be paid as if no dismissal had taken place. (*General Rules and Regulations of the Board of Education*, art. VIII., subd. 14 and 15.)

The provisions of the statute, interpreted as they must be in connection with the general rules and regulations of the Board of Education, show very plainly that the trustees of a ward have the authority to dismiss a teacher.

The provision in the statute by which the city superintendent of schools is empowered to annul the license of a teacher for any cause he may deem satisfactory, is a power separate and distinct from the authority to remove existing in the board of trustees. It is to be exercised only after ten days' notice to the teacher, and to the trustees of the ward, and after the teacher has been allowed a hearing. It is not subject to review on the

part of the Board of Education; but the remedy in the event of its improper exercise is, by statute, by an appeal within twenty days after the service of notice to the State superintendent. Its exercise by the city superintendent renders the removal of the teacher by the trustees of the ward an act of necessity, as the incumbent is no longer qualified to teach; but there is nothing in the statute indicating that the annulling of the license by the superintendent was intended by the Legislature to be the only mode in which a teacher could be removed. On the contrary, it is something more than the mere removal of a teacher. It takes away altogether the license which is the evidence of the qualification to teach, and without which the person cannot be employed thereafter in any school; whereas, the dismissal of a teacher by the trustees of a ward is no barrier to the same person being employed by the trustees of another. The plaintiff, having been engaged for no fixed period, was liable to be removed at any time, and the only question is, whether that power has been legally exercised.

The by-laws of the board require that the secretary shall notify every member of all meetings. The secretary did not notify the members of the meeting at which the resolution was adopted removing the plaintiff; and that being the case, it is insisted that she could not be removed unless all the trustees were present. The answer to this objection is, that all the trustees then entitled to act had notice of this meeting. It was a general, or stated meeting, the day, the place, and the hour for which were fixed by the by-laws; and of such a meeting all the members are deemed to have notice. (The King a. Harris, 1 *Barn.* and *Ad.*, 936; the Queen a. Grimshaw, 10 *Ad.* and *E. N. S*, 747.)

The secretary testified that it had not been his custom nor the practice of the board during that year to give notice of the stated meetings, and the omission to do so proceeded doubtless from the fact that it was unnecessary, as every member knew, by the by-laws, when these meetings were held.

The board of trustees is composed of eight trustees and of two commissioners, who are *ex-officio* members of the board, making in all ten persons. When the meeting was convened, at which the plaintiff was removed, there were but nine who were qualified to act, the office of one of the trustees (Bellamy)

being vacant. He had resigned more than a month previously, and a resolution had been adopted at a prior meeting accepting his resignation. A majority of the board of trustees may declare the seat of any trustee vacant who shall refuse to attend three stated meetings. (*Davies' Laws*, 1051, subd. 7.) The tender of his resignation on the part of a trustee is equivalent to such a refusal; and the adoption of a resolution accepting it, by a vote of a majority of the board, is, in effect, declaring the office vacant. In addition to which the trustee had removed to Rochester, and ceasing to be an inhabitant of the county, the office by statute became vacant. (1 *Rev. Stat.*, 122.)

It is insisted that the board could do no act until this vacancy was filled, or until the trustees had nominated a person to the Board of Education to fill it. There would have been some force in this objection if the power of appointing a trustee, or of nominating one for appointment, was vested exclusively in the board of trustees. But this power is vested by law in two other bodies.

When the office of a trustee becomes vacant, the board of school officers are to nominate a person to fill the office, and the power of appointment is in the Board of Education.

The board of school officers is a distinct body. It is composed of three integral parts—the trustees, the commissioners, and the inspectors—and each of these parts must co-operate in the nomination; that is, each part must be represented by a majority at a general meeting of the whole, or they can do no act; for when a general power is conferred upon two or more bodies, they must all come together for consultation and deliberation; though when they do, the vote of the majority of the persons present controls, even though one of the bodies should leave before the vote is taken. (The King *a.* Bower, 1 *Barn. & C.*, 492; *Exp.* Rogers, 7 *Cow.*, 526, 533, *note; Exp.* Humphrey, 10 *Wend.*, 612; People *a.* Whiteside, 23 *Ib.*, 9; 26 *Ib.*, 634.)

If the inspectors should not attend the meeting, the other two parts—the commissioners and the trustees—could make no nomination; and such being the fact, the board of trustees, having, as a body, neither the right to nominate nor the power of appointment, are not responsible if the vacancy is not filled. Nor does it follow that they must suspend and stop the transac-

tion of all business until it is filled. They are not answerable if the other two bodies delay or omit to perform the duty enjoined upon them by law. They are a separate body, having their own peculiar class of duties to discharge, and it might prove highly detrimental to the public interest to hold that they must cease to act until the vacancy is supplied.

But six trustees attended the meeting at which the resolution was adopted removing the plaintiff, five of whom voted for it, and one against it. It is urged that by the Revised Statutes such an act could not be done, except at a meeting at which all the trustees were present. The provision relied upon is in these words : "Whenever any duty or authority is confided by law to three or more persons, and whenever three or more persons are authorized or required by law to perform any act, such act may be done, and such power, authority, or duty, may be exercised and performed by a majority of such persons or officers, upon a meeting of all the persons or officers so intrusted or empowered, unless special provision is otherwise made." (2 *Rev. Stat.*, 555, § 27.) The referee was of opinion that this provision was not applicable. In this, however, he was mistaken. There is nothing in its language limiting its operation, and it has frequently been held to apply in analogous cases. (Whitford *a.* Scott, 14 *How. Pr.*, 302 ; Lee *a.* Parry, 4 *Den.*, 125.)

The interpretation to be put upon this provision, in its application to bodies intrusted with the management of matters of public concern, is, that where all the members of the body are notified that a meeting is to be held, and a majority of the whole number attend, the majority so attending may organize and legally proceed to the transaction of business. (McCoy *a.* Curtice, 9 *Wend.*, 17 ; *Exp.* Rogers, 7 *Cow.*, 526.) The dispatch of public business is not to be prevented, and the interest of the public is not to suffer, because one or more members, after being notified, are unable to or neglect to attend. If all have been duly notified, it is, within the meaning of the statute, "a meeting of all the persons;" and if a majority of the whole number attend, it is competent for that majority to do any act or exercise any power confided by law to the body collectively. As respects those who cannot, who neglect to or who refuse to attend, it is the same as if they had attended and

had dissented from the act of those who were present. (Horton *a.* Garrison, 23 *Barb.*, 176.)

There were but nine trustees who were entitled to act, as Bellamy had removed from the county, and by statute could act no longer. The board, consequently, as it then stood, consisted only of nine members, and as five of that number voted for the resolution, that was a majority of the whole. Where in matters of a private nature a power is to be exercised by certain designated individuals, all must concur in its exercise, and the death, absence, or inability of any one of them, will not make the execution of the power by the remainder of them valid. (Townsend *a.* Wilson, 1 *Barn. & A.*, 608; Anon., *Dyer*, 177.) But where powers, to be exercised as a continuous public trust or duty, are confided to designated persons, the discharge of the public duty or trust is not to be interrupted or fail, through the death, absence, or inability of any of the persons to whom the exercise of it is intrusted, provided there is a sufficient number to confer together, deliberate, and in view of the possibility of division of opinion, to decide upon what course is to be adopted; and if the power or duty is confided only to two persons, and one of them dies or is incapable of discharging it, the other cannot act alone (Pell *a.* Ulmar, 21 *Barb.*, 500), because there can be no conferring together in such a case; but where, to prevent a failure of justice, it is indispensable that one should act alone without conferring with the other, he may do so, and the act will be valid. (Rex *a.* Warrington, 1 *Salk.*, 152; Naylor *a.* Sharpless, 2 *Mod.*, 23; Rich *a.* Player, 2 *Show.*, 286; *Vin. Abm. Coroner*, 7; 14 *Vin. ut supra.*) If the public duty is intrusted to three, and one dies or is disqualified, I doubt if the others can act alone, as, in the event of division of opinion, there can be no decision; but if there is more than three remaining, the majority can decide, and if all qualified to act are notified, as was the case here, an act done by the majority of them is in my judgment valid. In this view, as there were only nine trustees entitled to act, a resolution, in favor of which five voted, was a resolution passed by a majority of the whole body as it then existed. Entertaining this view, the plaintiff was legally removed, and she cannot maintain the action. Upon the argument of this appeal, the counsel only discussed the single question whether the Board of

Education could be sued in any case; and, upon the submission, it was the understanding that if we were of opinion that the defendants could be sued, the counsel then desired to argue the other questions set forth in these points, which I have passed upon. But, since the argument, the counsel have stipulated to submit the whole case upon the points which have been laid before us, and thus the necessity of another argument is obviated. Respecting the single question which was discussed, I have to say that I entertain no doubt of the right to maintain an action against the Board of Education for the recovery of a teacher's salary. Though the power of appointing teachers is in the trustees, the payment of the salaries is imposed by law upon the Board of Education, and they are authorized to draw from the moneys which shall be raised for the purpose of public education such sums as may be requisite for the purpose. (*Laws of* 1851, 735, ch. 386, § 2, subd. 5; § 3, subd. 1, 2, 5, 7; § 9.) They may take and hold property, both real and personal, for the purpose of public education in the city of New York; and for all the purposes for which they were created, it is declared that they shall possess the powers and privileges of a corporation. (*Ib.*, § 2, subd. 1; § 8.)

If they possess the privileges and powers of a corporation, they must be subject to the obligation incident to the exercise of such powers. In the cases where it has been held that actions could not be maintained against public bodies *eo nomine*, but must be brought against the members individually, it has been where they possessed no corporate powers, but formed an integral part of the corporation of a county, as in the case of the board of health, or of the supervisors of the city and county. (Brady *a.* Supervisors of New York, 2 *Sandf.*, 460; 10 *N. Y.* (6 *Seld.*), 260; Gardner *a.* Board of Health, 4 *Sandf.*, 153; 10 *N. Y.* (6 *Seld.*), 409.)

HILTON and BRADY, JJ., concurred.

Judgment affirmed.