By the Court.—Freedman, J.
The complaint having been dismissed at the trial before any proof was offered, the position of the parties is substantially the same as upon a demurrer to the complaint on the ground that it does not state facts sufficient to constitute a cause of action. For the purpose of determining whether it does or not, every allegation contained in it must be taken as true.
The complaint alleges that the defendant is a corporation, created by, and existing under the laws of the State of ¡New York, and that, as such, it was not only its duty to see that the school premises in question were kept safe, and in good order, but also that it occupied and had the control and safe keeping of the same, with the appurtenances, &c., &c.
These allegations sufficiently aver, at least so far as the rules of pleading require it in cases of ordinary corporations, the legal capacity of the defendant to be sued, the duty imposed by law, and the occupation and use of the premises by the defendant. Moreover,, they are expressly admitted by the answer, and hence the defendant was not, and is not now, in a position to insist that the duty averred rested upon, and the use and occupation in truth was by and in the trustees of the ward in which the premises are situate, and that *56 if there was any negligence, it was by an employee of the trustees of the ward, for whose act or omission the defendant is not responsible.
A party who formally and explicitly admits, by his pleading, that which establishes the plaintiff’s right, will not be suffered to deny its existence, or to prove any state of facts inconsistent with that admission (Paige v. Willet, 38 N. Y. 28 ; Schreyer Mayor, &c. of N. Y., 39 N. Y. Super. Ct. [7 J. & S.] 1).
The defendant being thus concluded, and the complaint averring, in addition and with sufficient precision, an injury t,o the person of the plaintiff in consequence of the negligence of the defendant, the dismissal of the complaint can only be sustained provided, under the statutes relating to the board of education, no action whatever lies against it for negligence in the execution of its corporate duties.
Upon this branch of the case it has been argued:
I. That the board of education is an agency purely governmental, having no powers or franchises other than those which it is empowered and compelled to exercise for the public benefit, from which it derives no revenue or emolument as a corporation, and, therefore, is not liable for the consequence of neglect of an agent necessarily employed by it, in the absence of an express statute creating such liability.
II. That the duties defined by the statute creating the board fall within the class of purely governmental or public duties, and that, as to such duties, even when executed by a municipal corporation proper, endowed with all the powers usually vested in such a corporation, no liability arises for neglect of the agent employed in the execution thereof.
To determine the correctness of these propositions, it will be necessary to examine the statutes of this State relating to the defendant.
From the passage of the act passed April 9, 1805, *57 entitled “An Act to incorporate the society instituted in the city of New York for the establishment of a free school for the education of poor children, who do not belong to and are not provided for by any religious society,” and until the year 1842, the common school education in the city of New York was substantially in charge of the society thus incorporated, and whose name was altered in 1826 to “Public School Society of New York.”
The General School Act of 1812 and the acts amendatory thereof, never applied to the city and county of New York during that period.
In 1842 the common school system, which had prevailed for thirty years in the residue of the State, was by statute extended to the city and county of New York {Laws of 1842, p. 184), and the management of the schools to be established under it was placed in the hands of inspectors, trustees and commissioners to be elected by the people. The act permitted the Public School Society and other corporations to continue their existing schools and to participate in the public funds according to the number of their scholars, but such participation was prohibited to any school in which any religious sectarian doctrine or tenet might be taught, inculcated or practiced. Under that act the first board of education was organized.
The new system, as matter of history, met with great opposition from the powerful, compact and disciplined private corporation that had so long enjoyed exclusive charge, but, being based on popular suffrage, it rapidly grew into popular favor and triumphed over all obstacles. In this contest between the two systems which radically differed in principle, the State further interfered by the passage of statutes forbidding the opening or establishing of any kind of new school in any way whatsoever without the consent of the board of education.
*58 In 1847, the board of education presented a memorial to the legislature, praying for authority to establish a free college or academy. The memorial stated that “ one object of the proposed free institution is to create an additional interest in, and more completely popularize the common schools. It is believed that they will be regarded with additional favor, and attended with increased satisfaction, when the pupils and their parents feel that the children who have received their primary education in these schools can be admitted to all the benefits and advantages furnished by the best endowed college in the State, without any expense whatever.” The legislature responded by the passage of a law, authorizing the establishment of the free academy, giving the board of education power to direct the course of studies therein, and providing that the question of establishing the same should be submitted to the vote of the people. It was so submitted, and carried by a large majority.
In 1851, an act was passed entitled “An Act to amend, consolidate, and reduce to one act, the various acts relative to the common schools of the city of Yew York” (Laws of 1851, c. 386). The act provides for the election of two commissioners in each of the wards of the city of Yew York, and that the commissioners so elected shall constitute a board of education. The second section, as amended by Laws of 1854, ch. 101, provides as follows:
‘ ‘ The board of education shall have power .
“1. To take and hold property, both real and personal, devised or transferred to it for the purpose of public education in the city of Yew York.
“4. To estabish new schools as hereinafter provided. ......
“8. And for the purposes of this act, the said board shall possess the powers and privileges of a corporation.”
*59 By section 25, as amended by Laws of 1853, c. 301, section 14, it is further provided :
“ The title to all school property, real and personal, purchased with any moneys derived from the distribution or apportionment of the school moneys, or raised by taxation in the city of New York, shall be vested in the mayor, aldermen, and commonalty of said city, but shall be under the care and control of the board of education, for the purpose of public education, and all suits in relation to the same shall be brought in the name of said board.” .....
In 1853 the contest between the system inaugurated by the State and the public school society terminated. The latter ceased to exist, and pursuant to chapter 301 of the laws of that year, all its corporate property was conveyed and transferred to the mayor, aldermen, and commonalty of the city of New York to be thereafter held by them in the same manner as the school property then used and occupied by the schools organized under the statutes of 1842 and 1851 was held by them.
By Laws of 1871, c. 574, § 7, amending the charter of the city of New York, that had been passed in 1870, the board of education was made a department - of the government of the city of New York, and its title changed to “The Department of Public Instruction.”
But by Laws of 1873, c. 112, it was again reconstructed, and its original title and designation restored. Notwithstanding these changes, all the powers originally conferred were carefully preserved, so that the board of education, as now constituted, possesses the same powers and discharges the same duties which ■were vested in it prior to 1871.
Numerous other legislative enactments and amendments of the act of 1851 might be referred to, but they are omitted because, though they affected the terms of office of the commissioners, trustees and inspectors *60 and their mode of selection, and the general organization of the school system of this city, they worked no change in the powers and duties of the board of education, as above stated. 1 shall only add, for the present, that upon its reconstruction in 1873, -the board of education not only succeeded to all the powers and duties of the department of public instruction, but was expressly reinvested with the full control of the public schools and the public school system of the city, subject only to the general statutes of the State upon education.
From the foregoing examination it clearly appears that the board of education is a governmental agency created by the sovereign power of the State for the discharge of ¡Such powers and duties as were conferred upon it by law, and that in creating it the policy of the State was to instruct and enlighten equally the minds of all children needing education, irrespective of the nationality, religion or pecuniary condition of their parents, and by these means to gradually transform the heterogeneous and uncongenial elements of the cosmopolitan city of New York into an intelligent, virtuous, harmonious and happy people. But from these premises it does not necessarily follow that such agency cannot be sued for neglect of duty. The learned counsel for the defendant, it is true, has cited many cases in support of the theory that such liability does not exist, but most of them are cases in which it was held that political divisions of the State, municipal corporations, or boards of officers, exercising public duties only, are not liable, in the absence of a statute creating such liability, for the negligence of independent officers acting under them, whose duties are specifically prescribed by law, and who, though appointed and paid by them, are thus appointed and paid in pursuance of the requirements of a statute. The point decided in these cases is that, there being no control save *61 in. strict accordance with the provisions of law, the principle of respondeat superior does not apply. But in the leading case belonging to that class and arising in this State, it was conceded, and cases were adverted to to illustrate the concession, that where the duty is imposed upon the municipal corporation itself, and not upon public officers appointed by it, and where it accepts the duty and the power to perform it, and itself, by its own agents, sets abqnt the work, or undertakes to set about it by its own agents, then, for negligent omission to do or for doing in a negligent way, it may be liable (Maxmilian v. Mayor, &c., 62 N. Y. 160).
The case at bar is not shown to fall within the class of cases cited by defendant’s counsel and above referred to, because the charge of negligence is made by the complaint against the defendant in its corporate capac ity, and not against any particular officer or set of officers acting under its authority. Not even the word “agent” or “ servant” is used. True, the defendant can act only through agents, but in the absence of proof of particulars, and especially in view of the admissions contained in the answer, it cannot be assumed that the negligence complained of was a negligent act or omission on the part of an independent officer, of whom the defendant is not the superior.
There is another class of cases which are equally inapplicable, in which it was held that certain persons spoken of as a concrete body could not be sued in their collective capacity, because they were not in law a corporation (Gardner v. Board of Health, 10 N. Y. 409 ; Brady v. Supervisors, Id. 260).
Nor would it answer any useful purpose to consider in what instances the commissioners constituting the board of education might perhaps incur an individual liability.
In addition to being a governmental agency, the board of education is also a corporation. This fact is *62 alleged in the complaint; the answer expressly admits it; and the statutes relating to the defendant expressly provide that for the purposes for which it was created, the board should possess the powers and privileges of a corporation. For all such purposes it does possess all the powers and attributes of a corporation. This being so, the courts have held the defendant responsible for its own contracts, and refused to impose any liability therefor upon the mayor, aldermen and commonalty of the city of New York (Dannat v. Mayor, &c. of N. Y., 6 Hun, 88).
For the same reason the courts have refused to inflict upon the municipality of New York the responsibility for defendant’s torts or negligence (Terry v. Mayor, &c., 8 Bosw. 508; Ham v. Mayor, &c., 37 N. Y. Super. Ct. [5 J. & S.] 458, and affirmed by the court of appeals September 18, 1877). And finally, it has been established that this defendant may be directly sued, as a corporation, by a teacher employed pursuant to law by the board of trustees of a ward (Gildersleeve v. Board of Education, 17 Abb. Pr. 201, and cited with approval by the court of appeals in Ham v. Mayor, &c.).
In the opinion rendered in that case the general term of the court of common pleas held : “Though the power of appointing teachers is in the trustees, the payment of the salaries is imposed by law upon the board of education, and they are authorized to draw from the moneys which shall be raised for the purpose of public education such sums as may be requisite for the purpose {Laws of 1851, p. 735, ch. 386, § 2, subd. 5, § 3, subds. 1, 2, 5, 7, § 9). They may take and hold property, both real and personal, for the purpose of public education in the city of New York; and for all the purposes for which they were created, it is declared that they shall possess the powers and privileges of a corporation {Id. § 2, subd. 1, § 8). If they possess the *63 privileges and powers of a corporation, they must be subject to the obligation incident to the exercise of such powers.”
Being thus subject to the obligation stated, it is difficult to perceive why the said board should not be liable to an action for the neglect of a duty imposed upon it by law. If the duty had not been imposed upon the board, but upon the commissioners or trustees of the ward in which the premises are situate, as such, the delinquent commissioners or trustees would be personally liable to the plaintiff (Bassett v. Fish, recently decided by the general term of the supreme court of the fourth department, see 5 N. Y. Weekly Dig. 360). As, however, the case stands at present under the pleadings, the duty for neglecting which the action was brought must be deemed to have been imposed upon the board in its corporate capacity, and hence the inquiry is narrowed down to the simple question whether the board as a corporation can be sued for its own neglect of duty imposed upon it by law.
To this it is objected :
1. That the rule holding a corporation liable for such neglect, applies only to a municipal corporation or any other corporate body enjoying franchises and privileges for its own convenience or benefit, and does not apply to those minor political organizations or quasi corporations, whose corporate powers and functions are conferred without their solicitation for the benefit, not of themselves, but of the public at large; and that the board of education belongs to the class secondly referred to ; and,
2. That the amount of money for defraying the expenses of said board, which was formerly apportioned by the State to the county of New York, from the common school fund, is now wholly paid from funds raised by taxation, pursuant to an estimate submitted *64 to and sanctioned by the board of apportionment, in the manner prescribed by Laws of 1873, chap. 335, section 112, as amended by Laws of 1873, chap. 757, section 20.
Similar objections were urged, and carefully considered by this court, in the highly analogous case of Clarissey v. Metropolitan Fire Department (1 Sweeny, 224). The act establishing that department created a fire district, composed of the cities of New York and Brooklyn. The governor and senate were authorized to appoint four commissioners to take and have control and management of all officers, men, property, measures, and action, for the prevention and extinguishment of fires within the said district, and to be known by the name of the 1 ‘ Metropolitan Fire Department.” The department, as thus constituted, was not in terms declared to be a corporation, nor was it made subservient or responsible to any local authority in either city. Its officers and agents were appointed by a power above all local authority, and were held amenable only to the governor and the legislature. But the mode of raising money for its support was by estimates made by the commissioners and the comptroller and the mayor of the city of New York, as a board of estimate, which estimates, when approved by the board of supervisors of the county of New York, had to be levied and collected by said board of supervisors by taxation of the real and personal estate subject to taxation within the county of New York. All real estate, fire apparatus, hose, implements, tools, bells and bell towers, fire-telegraph, and all property of whatever nature, then or theretofore in use by the firemen or fire department of the city of New York, belonging to said city, was transferred to the keeping and custody of the Metropolitan Fire Department, and for its use, but the title to all such property remained in the mayor, aldermen, and commonalty of the city of New York. In regard *65 to the title of property to be thereafter acquired, the act was silent.
Upon full discussion of all the facts and the provisions of law bearing upon the case, of which a more detailed mention than already given cannot be made here, and of the authorities cited, the court came to the conclusion that whether the Metropolitan Fire Department was regarded as a córporation sub modo, or as a collective body succeeding, under legislative authority, to the powers and capacities of the old lire department, which had been a corporation, it was, in either aspect, capable of being' sued, and might be rendered liable in an action for injuries resulting from the negligence of its agents or servants, or from the faulty, defective or insufficient character of the apparatus used by it in extinguishing fires, and that the existence of difficulty in the collection of any judgment that might be recovered for any such cause, was not sufficient to defeat the action.
This decision stands unreversed; nor have I been able to find any case since decided by the court of appeals in which it was questioned or overruled by implication or in effect. Being therefore the law of this court, the two objections lastly considered must be held untenable, especially as the board of education was expressly created a corporation for all the purposes of the act creating it, with power to take and hold property, both real and personal, devised or transferred to it for the purposes of public education in the city of New York.
For the foregoing reasons I am of the opinion that the complaint herein was erroneously dismissed, and that the exception taken by the plaintiff to such dismissal should be sustained and a new trial ordered with costs to plaintiff to abide the event.
Sedgwick, J., concurred.