By the Court—Robertson, J.
I think the error committed in the rule of damages adopted by the Eeferee, would be a sufficient cause for sending this case back to a new trial. Injury from a cause which could be ascertained, and the continuance of which could be prevented at a moderate expense, was not to be compensated for by a difference in the value of the lease, which might or might not have originated therefrom, particularly where there was evidently no malice.
But I think an error was committed in holding the defendants liable at all; their active intervention to produce the injury was not established, nor even their ownership of the building. A mere sign on a building, or even the use to which it is applied, much less its reputation, is no evidence that the building was one whose title was required to be in defendants. (2 R. S., 5th ed., p. 154, § 256.)
*508 But even if the title to the land were in the defendants, and the buildings upon it were a public school and its appurtenances, that fact alone would not make them liable, for they have neither the right to erect any such buildings, nor any control over them or any public school property, after they are erected. The care and control of them, or such property, is vested in the Board of Education, and all suits in relation to such property must be brought in their name. (Laws of 1851, p. 727, § 2, subd. 1 ; Laws of 1853, p. 635, §§ 14, 11, amending Laws of 1851, p. 747.) The safe keeping of such property is committed to the ward trustees, (Laws of 1851, p. 740, § 10, subd. 1,) who alone have power to repair and alter it, and have the exclusive'care and management of the school as long as it is used for such purposes. (Laws of 1854, p. 241, § 10, subd. 2, as amended.) The city corporation cannot even sell the land until a majority of the ward school officers and the Board of Education determine that it is no longer to be used for a school house. (Laws of 1851, p. 748, § 27.) They have, therefore, neither the ordinary rights of enjoyment of owners, while they hold the land and it is used for a school house, nor can they control or repair any part of it during that time, or even dispose of it, so as to get rid of all responsibility. They, therefore, cannot be made liable as the continuers of a nuisance.
Uor can the defendants be made liable as the creators of a nuisance. The ward officers procure the sites and erect buildings thereon for public school houses, and the plans of them are to be advertised for and approved by the Board of Education. (Laws of 1851, p. 747, §§ 23, 24.) • The necessary expenditures are to be reported to the supervisors of the county, who are to raise the money and pay it into the city treasury, out of which it is to be again paid to the Board of Education, who disburse it. (Laws of 1851, p. 744, §§ 3, 16, as amended by the Laws of 1854, p. 240, § 3, subd. 1.) The only privilege given to the Common Council is to anticipate, by a loan, the raising of the money by taxation. (Laws of 1851, p. 749, § 28.) The de *509 fendauts have not, therefore, by law, any right to select the land or prescribe the kind of building, or determine what fixtures there shall be in it when first erected; they can do nothing except have the title thrust upon them and pay the money required. There certainly can be no presumption, therefore, that they created any nuisance by insufficient water-pipes; nor can the Board of Education or ward officers be considered, in any sense, their agents; all have equally separate duties to perform, for any neglect of which they are responsible. The defendants are but naked trustees without power to intermeddle with the subject of the trust, even to preserve it, much less to prevent any injury to others by its use.
The defendants, therefore, can neither buy nor sell the land on which public schools are built; cannot control their use; and have not the custody of them. They did not erect nor can they repair them or their appurtenances, all of which matters are in the hands of other public bodies. So far as the insertion of any insufficient water pipes in such buildings or the erection of a nuisance on the land is concerned, they are as irresponsible as if the acts causing the injury had been done by a trespasser. The Board of Education and ward school officers are in possession of the land for school purposes, under the statute, for a term coeval with its occupation for a public school, and the defendants would be trespassers if they attempted to eject them or insert or repair water pipes against their consent. They are therefore not liable as the creators or continuers of a nuisance.
It is claimed, however, that the defendants are liable as owners of the Croton Aqueduct, deriving emolument from its use, and the case of Bailey v. The Mayor, &c., of New York, (3 Hill 531 ; S. C., on appeal, 2 Den., 433,) is cited as in point. It must be recollected, however, that the negligence in that case had been practised in the construction of the main works of the aqueduct, and the defendants were made responsible as the owners thereof, and representing those who were to be benefited thereby, but the *510 injury in this case arose from defects in the lateral service pipes; these are inserted in the main street pipes by private individuals at their own cost and risk, to bring the water into their own premises for consumption, and they remain the property of such individuals. In such case the defendants are no more liable for the result of an imperfection in their construction than for those of vessels in which citizens might carry the water from the reservoirs if they were public fountains. The defendants are trustees of the water as an article of public consumption, and are bound to furnish it to all who desire to use it under proper regulations, but they are not bound to supervise the insertion of service pipes or superintend their fabrication, fitting and preservation, except to prevent injury to their works ; the water drawn through private service pipes becomes as much private property as though it had been sold, and the subsequent ill use of it by negligence or otherwise to the injury of another cannot make the defendants liable any more than if they had sold an axe with which trespasses had been committed by cutting timber on another person’s grounds.
But there is not in reality evidence enough in the case to charge any one with the wrong. The use of the Croton water by pipes was legal. Fo one is responsible for injury committed by their breaking, unless caused by negligence or design. If all due diligence is used in making or maintaining the pipes, the injury becomes an unavoidable accident, for which no one is responsible. There was no evidence in this case that the pipes were originally defective. On the contrary, as they were in long before the damage in this particular case, they must have been originally strong. If originally sound, there was no proof of want of care in repairing any known defects or discovering them ; on the contrary, it took six months of close investigation to discover where the leak was, and then they were repaired. Mere results are not proof of want of care. There is no presumption of it even in case of accidents on railways. On this principle, in an action for an *511 injury to a horse by a locomotive engine on a railway, proof that a gate in the enclosure in which he was confined over night was found open in the morning was held no proof of want of care on the owner’s part. (Waldron v. The Rensselaer and Sar. R. R. Co., 8 Barb., 390.) Heglect is not to be presumed any more than fraud, except in cases where the policy of the law places the burden of disproving it upon one party.
For all these reasons the judgment appealed from must be reversed, the order for a reference discharged, and a new trial had, with costs to abide the event.