# FIRST DEPARTMENT.

## GENERAL TERM, JANUARY, 1875.

---

### MILLER v. MAYOR OF NEW YORK.

*New York City — Board of education — unauthorized contract for public work — liability of city therefor — Agency — unauthorized act of public officer not binding on principal.*

The board of education of New York City, created by Laws 1851, chapter 386, which had the control of public school expenses, by a regulation which it was authorized to make, gave power to the trustees of each ward to expend a certain sum, and no more, for repairs to school-houses. Plaintiff, during the existence of the board mentioned, under direction of the trustees, made repairs on the school-houses of a ward, but the amount allowed to the trustees was expended without paying plaintiff therefor. By Laws 1871, chapter 374, the board of education was abolished and its duties and powers, were vested in a department of the city. Subsequently, the commissioners having charge of that department acknowledged the justice of the plaintiff's claim for such repairs, and claims by others of like nature, and requested an appropriation from the board of apportionment, which had control of such matters, to pay the same; but no action was taken thereon by the board of apportionment. *Held* (1), that the board of education was a corporate body during its existence, capable of being sued, and that the city of New York was not liable for its contracts or torts; (2) that the employment of plaintiff was in excess of the powers of the ward trustees, and the board of education was not liable therefor; (3) that the change in the control of the public schools did not affect the matter, or render the city liable, and (4) that the acknowledgment of the justice of the claim by the commissioners of instruc-tion did not impose any obligation upon the city to pay the same.

The doctrine that principals are estopped from denying the authority of agents acting within the scope of their apparent powers, *held* not to apply to public officers.

MOTION by plaintiff for judgment upon a verdict for plaintiff, directed by the court, under exceptions ordered to be heard in the first instance at general term.

The action was brought by James C. Miller against the Mayor, Aldermen and Commonalty of the City of New York, to recover for work, labor, and services performed, and materials furnished. The facts fully appear in the opinion.

*Amos G. Hull*, for plaintiff, upon the question of estoppel, cited *Supervisors* v. *Schenck*, 5 Wall. 784; *Knox Co.* v. *Aspinwall*, 21 How. (U. S.), 539; *Bissell* v. *Jeffersonville*, 24 id. 288; *Gelpcke* v. *Dubuque*, 1 Wall. 203; *Mercer Co.* v. *Hacket*, 1 id. 93; *Mayor* v. *Lord*, 9 id. 414; *Farmers' Loan and Trust Co.* v. *Curtis*, 7 N. Y. 466; *Stoney* v. *American Life Insurance Co.* 11 Paige, 635; *New York & New Haven Railroad Co.* v. *Schurley*, 34 N. Y. 30; *F. & M. Bank* v. *Drovers' Bank*, 16 id. 133.

*E. Delafield Smith* and *D. J. Dean*, for defendants.

DAVIS, P. J. The plaintiff performed the services and furnished the materials, for which this action was brought, in repairing school-houses in the twenty-second ward of the city of New York, at the request of some of the school trustees of that ward. The work was done at different dates between March 1st and December 31st, of that year, in small jobs of less than $50 each. The board of education, created by chapter 386 of the Laws of 1851, was at that time in existence. It was a body corporate, capable of suing and being sued, and the corporation of the city of New York was not liable either for its contracts or torts. *Terry* v. *Mayor of N. Y.*, 8 Bosw. 504; *Treadwell* v. *Mayor of N. Y.*, 1 Daly 123; *Ham* v. *Mayor of N. Y.*, 5 Jones & S. 458; *Gildersleeve* v. *Board of Education*, 17 Abb. 201.

The trustees of the several districts were subordinate officers, to some extent under the control of the board of education. The fund of the board to meet expenses incurred by it, were provided pursuant to the third section of the act of 1851 (chapter 386, Laws of 1851), and the fifteenth section of the same act, by the board of supervisors, upon estimates to be made by the board of education, which were additional to the sums required by the fifteenth section. The board were authorized to make by-laws, and one of such by-laws provided, that a sum of money equal to 33⅓ cents for each "visit of attendance" at the schools of the ward, is set apart, to be expended in repairs and incidental expenses, and all expenditure for such purposes in excess of the sum so fixed, was prohibited.

The amount allowed under this by-law to the trustees of the twenty-second ward, for the year 1870, was $2,566. There was a surplus in the year 1869 of $138.76, which, in addition to the allowance, gave the trustees $2,704.67, as the sum which they had authority to expend for repairs in the year 1870. All of this sum was paid out by the trustees, without applying any part of it to the bills of plaintiff now in suit, although other bills for like services were paid to him.

By chapter 374 of the Laws of 1871, the board of education was abolished, and a new department in the government of the city of New York, called the department of public instruction, was created, "to have the same powers and discharge the same duties," which were before vested in the board of education. No provision was made in the act to charge the debts and liabilities of the corporation abolished upon the city. By chapter 112 of the Laws of 1873, a new board of education was created, which succeeded to all the powers vested in the prior board of education, and now is claimed to exist as an independent corporation, and not as an executive department of the city. The plaintiff's action was brought after the last whirl in the wheel of legislation had turned out the last-named board of education.

While the department of public instruction had charge of affairs, divers accounts contracted by the trustees of school districts, including, as is understood, the plaintiff's accounts, were brought to the attention of the commissioners having charge of that department, and were referred to a committee, who made a report to the board of instruction. That report was put in evidence on the trial by the plaintiff. It contains, doubtless, a correct and fair statement of the facts touching the accounts and expenses, the views of the commissioners as to what ought to be done in terms that meet our cordial approval. After a recital of divers facts, the committee proposed certain preambles and resolutions, the material portion of which are as follows:

"WHEREAS, The school trustees of the several wards, in the administration of their school duties during the years 1869 and 1870 (mainly during the year 1870), incurred for repairs to the school buildings and other incidental expenses, sundry bills, now on file in the office of the clerk of this board, in amounts beyond the allowances to said wards for these purposes, made under sections 61 and 62 of the by-laws, amounting in the aggregate to about the sum of twenty-five thousand dollars ($25,000); and,

"WHEREAS, The said bills were incurred from an apparent necessity, and are mainly due to mechanics who performed the work and furnished the materials, in good faith, upon the requisitions of the trustees, and in entire ignorance of any legal obstacle to their prompt payment;

"*Resolved,* That an application be, and the same is hereby authorized to be made, by the officers of this board to the financial authorities of the city and county for an appropriation of the sum of twenty-five thousand dollars ($25,000) in addition to the amount appropriated for public instruction for 1873 by the board of apportionment, said $25,000, or so much of said sum as may be required, to be applied when received by this board in liquidation of all claims for work and materials incurred by the school trustees of the respective wards, in the years 1869 and 1870, upon their approval by the superintendent of buildings, and the committee on buildings, repairs and furniture, the payment of said claims to be made in accordance with the rules of this board governing expenses incurred by school trustees."

These preambles and resolution were adopted by the board of commissioners, but it was not shown that the board of apportionment ever acted upon them, or made the appropriation requested.

We regret to say, that upon this state of facts, we think the plaintiff cannot maintain his action against the city, for two reasons: the liability was incurred by the trustees of the school district, in excess of their authority; they had no power to subject the board of education to liability for such expenses, beyond the appropriation, and however thoroughly they may have acted in good faith in incurring the expenses, that is to say, in making none that they did not regard as necessary or proper, yet the limit of their power could not be extended on any such consideration. They were charged with certain official duties, the performance of which was regulated and limited by well defined restrictions. All persons dealing with them are bound in law to know the powers conferred upon them and their limitations, and have no remedy for an abuse or excess of such powers, except against the officer chargeable therewith. To hold otherwise would be to unloosen all the agencies of municipal and other governments, to create unlimited and ruinous obligations. We have so often been constrained to apply this rule in suits against the city that it seems unnecessary to cite authorities.

Miller v. Mayor of New York.

The plaintiff could not have maintained his suit against the board of education before its abolition by the act of 1871. Having no legal right of action against that board, it is impossible that any logical effect of the law abolishing that corporation could create a right of action against the city, which had no lawful existence against the board of education. There was nothing in the act which expressly created such a liability, and nothing in the fact from which it can be implied. The subsequent action of the commissioners of public instruction could have no such effect. They recognized a moral and not a legal obligation, and recommended such action on the part of the board of apportionment as would enable them to discharge that obligation, but failing to get the money asked for by their resolution, no liability can spring out of their commendable effort. The question of the liabilty of the city in such a case has been lately passed upon by ROBINSON, J, of the New York common pleas, in the case of *Green* v. *Mayor of New York*. That able and careful judge reached the same conclusion we have, as appears by his findings and decision in the case which we have inspected.

The authorities on which the learned counsel for the plaintiff relies have no application, we think, to a case of this kind. The estoppel, which the courts apply to prevent principals, whether natural persons or business corporations, from denying the authority of their agents while acting within the scope of their apparent powers, has no footing where the relation to the transaction of the alleged agent is that of a public officer professing to discharge official functions, and the question is the extent to which such officer may charge by contract the government or department of government which creates or controls him.

The motion for judgment must be denied and new trial ordered, with costs to abide event.

*Motion denied and new trial ordered.*