WILLIAM H. DANNAT and another, Appellants, v. THE MAYOR, Etc., OF THE CITY OF NEW YORK, Respondent.

*Board of public instruction of city of New York—liability of city upon contract of—Warrant for payment of claims—when mandamus granted.*

The city of New York is not liable upon a contract for the erection of a school-house, entered into by the board of public instruction, and no action can be maintained against it thereon.

Where the board of public instruction wrongfully refuses to draw its warrant for the payment of a claim justly due, the court will, on the application of the party aggrieved, compel the proper officer to draw and deliver such warrant.

Appeal from a judgment in favor of the defendant, entered upon the dismissal of the complaint at the Circuit.

*John H. Hand* and *Gerardus C. King*, for the appellants.

*D. J. Dean*, for the respondent.

Brady, J. :

The plaintiffs seek to recover from the defendants the amount of a draft upon the board of public instruction, drawn by Alonzo Dutch, who had contracted with the school trustees of the Tenth ward of the city to furnish all the carpenter work and materials necessary to the completion of a new school-house, then about to be erected.

The complaint was dismissed at the Circuit upon the ground that the action could not be maintained against the defendants, inasmuch as they were not liable for the acts of the department of

public instruction. The question presented is whether this ruling was correct. When the contract was made with Dutch, what is now known as the board of education was styled the department of public instruction. It was originally known as the board of education. (Laws 1851, p. 735.) In 1871 (Laws, p. 1244), it became a department of public instruction under the general city government, and in 1873 was again reconstructed and its original designation restored. (Laws of 1873, p. 96.) Notwithstanding these changes all the powers originally conferred were preserved. The act of 1871 (*supra*), provided (article 15), that the department of public instruction should have the same powers and discharge the same duties, when organized under that section, which were then vested in the board of education; and the act of 1873 (*supra*), declared that the board of education then created, when organized, should have all the powers and discharge all the duties which were then vested in the department of public instruction. This legislation, which chiefly affected the terms of office of the commissioners, inspectors and trustees and their mode of selection and the general organization of school system of this city, made no inroad upon the duties and powers of the board of education conferred by the act of 1851 (*supra*), and they remain substantially the same. These powers and duties are coextensive with the subject to which they relate, and embrace the purchase of sites for schools and of erecting buildings thereon, and the care and control over them after they are erected, and it is provided, that all suits in relation to such property must be brought in the name of the board. The defendants have neither the right to erect schools, nor control over them when completed. They cannot sell the land, though the title is vested in them, until a majority of the ward school officers and the board of education determine that it is no longer to be used as a school-house. The board of education is not, and it has never been, other than a distinctive educational branch of government or separate organization, having by the statute (1851) its own separate funds, and empowered to draw money in accordance with the provisions of special statutes. (*Terry* v. *The Mayor*, 8 Bosw., 508 ; *The People ex rel. Kedian* v. *Neilson*, 5 N. Y. S. C. [T. & C.], 367 ; Statutes 1851, 1871, 1873, *supra*.) " They have therefore, said ROBERTSON, J., in *Terry* v. *The Mayor*, when writing of the defendants herein," neither the

ordinary rights of enjoyment of owners, while they hold the land and it is used for a school-house, nor can they control or repair any part of it during that time, or even dispose of it so as to get rid of all responsibility." The board of education has by law the means, and it is their duty to provide for the expenses of their organization, and the fund is raised, and credited to them subject to their draft, in the manner provided by law.

The defendants have no control over the fund except, through their financial officer, to see that the drafts are drawn according to the provisions of the statute. They cannot apply the money, and there is no separate fund in their custody specifically provided to meet claims against the board of education, or growing out of their contracts, over which the board of education have no control. The result is, that the defendants cannot be called upon, by action against them originally, to respond for the omissions of the board of education, or for the violation of the contracts pertaining to their department, or to pay debts justly due upon contracts made by them. The board, for the purposes of the act (1851), possesses the powers and privileges of a corporation, and is, therefore, capable of suing and being sued. So far as the courts have been called upon to express their judgment, it has been generally suggestive of the doctrine, if not to the effect, that the defendants are not liable upon the contracts of the board of education, or those made by any officers existing under the act of 1851 and subsequent acts, which they have the power to make. This view of the subject is based upon the proposition that the board has a distinct, separate and independent organization, invested with extraordinary powers and duties, exclusively conferred upon it and the officers connected with the system of which it forms a part, and with which the defendants cannot interfere, and over which they have no supervisory power or control — possessing a separate corporate existence, with power to dictate the amount of money required to discharge its duties and obligations, and the exclusive right to appropriate it in the performance of their proper, and therefore legal, functions (see *Terry* v. *The Mayor, supra ; Gildersleeve* v. *The Bd. of Education,* 17 Abb. Pr., 201; *Miller* v. *The Mayor,* 3 Hun, 35; *Ham* v. *The Mayor,* 37 N. Y. Supr. Ct., 467; *Maximilian* v. *The Mayor,* 4 N. Y. S. C. [T. & C.], 491; 2 Hun, 263;

*Green* v. *The Mayor*, Com. Pl.); and upon the further proposition that the department is in reality managed and controlled by a board of officers created by statute, with specific powers and duties, to perform a public service, not peculiarly local or corporate, but as part of a general system, and who are independent of the defendants as to their tenure of office and the manner of discharging their duties, a condition which excludes the duty of *respondeat superior* as applicable to the defendants. (2 Dillon on Mun. Corp., § 772; *Ham* v. *The Mayor, supra; Bank of Commonwealth* v. *The Mayor*, 43 N. Y., 184; *Maximilian* v. *The Mayor, supra; Martin* v. *The Mayor*, 1 Hill, 545; *Russell* v. *The Mayor*, 2 Denio, 473, 481; *Lorillard* v. *Monroe*, 11 N. Y., 392.) And it does not at all affect the rigor of these propositions, that by the act of 1871 the board of education, under the title of the department of public instruction, became a part of the general city government, because, under that act, all its powers and duties were retained and declared to be continued. (*Maximilian* v. *The Mayor, supra*.) The city of New York, represented by the defendants, ought not to be called upon to manage the controversies of the board of education, and to assume in that way the disposition of subjects with which it has no immediate connection. The duty of guarding the property and rights of the schools, and of all things relating to them, is imposed by statute upon the board of education and the officers connected with and subsidiary to them, and whatever remedies are sought must be enforced against them in the first instance. If the claimant be successful in establishing his demand, and the board of education refuse to pay in the manner provided by law on a proper application therefor, he is not remediless. He can, by mandamus, compel the performance of that duty, and the defendants can then, through their financial officer, be called upon to pay, out of the funds appropriated for that purpose, the amount which is declared to be justly due and payable. There is, perhaps, in this procedure, what is called circumlocution, but it is, after all, but one additional step, and not at all formidable at that. The present legal system is designed to prevent circuity of action; but there are instances where separate but allied organizations are better adapted to accomplish the objects in view, and the independent character of the board of education in its relation to the defendants is a happy illus-

tration of the fact. The subject embraced is too important to be involved with any other corporate existence in the details of its organization and management, and the defendants are therefore only allies so far as to hold the title to the property and the funds, in order that the former may be preserved in perpetuity for the people of New York, and the other may not be disbursed without protective ceremonies. The defendants are not called upon by law to pay any claims against the board of education until the voucher provided for by law is given, and that can always be obtained, when it is unjustly withheld, by resort to the courts. The plaintiff pre-sented no such document, and he must fail in this action.

The judgment, for these reasons, should be affirmed, with costs

DAVIS, P. J., and DANIELS, J., concurred in the result.

Judgment affirmed, with costs.