THOMAS DONOVAN, by Guardian, etc., Appellant, *v.* THE BOARD OF EDUCATION OF THE CITY OF NEW YORK, Respondent.

While under the statutes in reference to public education in the city of New York (chap. 386, Laws of 1851; chap. 301, Laws of 1853; chap. 101, Laws of 1854; chap. 574, Laws of 1871; chap. 112, Laws of 1873), the board of education is vested with the general control and care of the school buildings and property "for the purposes of public education," the especial care and safe-keeping of such buildings in the respective wards is committed to the ward trustees, who are also authorized to make repairs and are not the agents of the board but independent public officers, and for their negligence the board is not liable.

Accordingly *held*, that defendant was not liable for injuries sustained by plaintiff in falling into an excavation in the yard of a building occupied as a ward school, the grating to which excavation had been negligently left open either by the janitor or by masons employed by the ward trustees in making repairs to the building.

(Argued March 11, 1881; decided April 19, 1881.)

APPEAL from judgment of the General Term of the Superior Court of the city of New York, entered upon an order made May 3, 1880, affirming a judgment in favor of defendant, entered upon an order nonsuiting plaintiff on trial.

The nature of the action and the facts are set forth sufficiently in the opinion.

*Edward P. Wilder* for appellant. The defendant is by law constituted the custodian of the premises in question. (Laws of 1851, chap. 386, § 2; Laws of 1853, chap. 301, § 14; chap. 101 of 1854; chap. 574 of 1871, § 7; chap. 112 of 1873, p. 196, §§ 2, 4.) The defendant is responsible for its own contracts. (*Dannat* v. *The Mayor, etc.,* 6 Hun, 88; *Terry* v. *The Mayor,* 8 Bosw. 508; *Gildersleeve* v. *Board of Education,* 17 Abb. 201; *Ham* v. *The Mayor,* 4 J. & S. 459; affirmed, 70 N. Y. 459; 12 J. & S. 53, 63.) The defendant is the direct superior of the ward trustees and responsible for their negligence. (*Ham* v. *The Mayor,* 70 N. Y. 463; *Maximilian* v. *Mayor,* 62 id. 162; Article 17 of By-Laws, §§ 52–60; also §§ 105, 114 *et passim,* in Manual of 1874; chap. 386 of 1851,

§ 10, subd. 2, as amended by act of 1864, Manual, p. 27; *Bassett* v. *Fish*, 75 N.Y. 303; *Dannat* v. *The Mayor*, 6 Hun, 91.) The owner or occupant of premises is bound to observe reasonable care in keeping them safe and free from 'pit-falls as to all persons lawfully visiting the premises. (Laws of 1874, chap. 421; *Bennett* v. *L. & N. R. R. Co.* [U. S. Supreme Ct.], 23 Alb. L. J. 111; *Davis* v. *Congregational Church* [Mass. Sup. Ct.], id. 38; *McCarthy* v. *City of Syracuse*, 46 N. Y. 194; *Mersey Docks Trustees* v. *Gibbs*, 3 Hurlst. & Colt. 1043; *Bartlett* v. *Crozier*, 17 Johns. 439; *Hover* v. *Barkhoof*, 44 N. Y. 113; *Shepherd* v. *Lincoln*, 17 Wend. 250; *Bassett* v. *Fish*, 75 N. Y. 310–311.) The public or administrative character of the defendant affords it no immunity against the consequences of its negligence. (Story on Agency, § 319; *Murphy* v. *Comm'rs of Emigration*, 28 N. Y. 142; *Glavin* v. *Rhode Island Hospital*, 12 R. I. 411; *U. S.* v. *Schurz* [U. S. Supreme Ct.], 23 Alb. L. J. 116; *Dannat* v. *The Mayor*, 6 Hun, 90; *Lane* v. *Cotton*, 1 Ld. Raym. 646; Jones & Spencer, 60–61, 63–65; *Clarissey* v. *Metropolitan F. Dep't*, 1 Sweeney, 224; 75 N. Y. 312–313.)

*D. J. Dean* for respondent. The defendant is not the superior of the persons whose negligent act caused the injury to the plaintiff. (Laws of 1853, chap. 101, § 10, p. 241; Laws of 1864, chap. 351, § 19, p. 829.) The relation of master and servant did not subsist between the defendant and the employes of the master-mason, who was employed by the ward trustees to execute the repairs on the school building. (Laws of 1864, chap. 351, § 12, p. 822; *Maximilian* v. *Mayor*, 62 N. Y. 163; *Pack* v. *The Mayor*, 8 id. 222; *Kelly* v. *Mayor*, 11 id. 432; *Blake* v. *Ferris*, 5 id. 48; *People ex rel. Campbell* v. *Campbell*, Ct. of App., Oct. 1880; *Walcott* v. *Swampscott*, 1 Allen, 101; *White* v. *Philipston*, 10 Metc. 108; *Hafford* v. *New Bedford*, 16 Gray, 297; *Griggs* v. *Foote*, 4 Allen, 195, 197; *Buttrick* v. *Lowell*, 1 id. 172; *Kimball* v. *Boston*, id. 417; *Morrison* v. *Lawrence*, 98 Mass. 219; *Russell* v. *The Mayor*, 2 Den. 481; *Fisher* v. *Boston*, 104 Mass. 87; *Barney* v. *Lowell*, 98 id. 570;

*N. Y. & Brooklyn Saw-mill Co.* v. *Brooklyn*, 71 N. Y. 580.) The defendant is not liable in damages, at the suit of a person injured in consequence of the negligent act or omission of a servant or agent necessarily employed by it, in the execution of its public duties. (Laws of 1871, chap. 574, § 7, p. 1244; Laws of 1851, chap. 386, p. 734; Laws of 1873, chap. 335, § 112; id., chap. 757, § 20; *Maximillian* v. *Mayor*, 62 N. Y. 165; 1 Dillon on Mun. Corp. 150, § 39; id. 151; *Oliver* v. *Worcester*, 102 Mass. 489, 499; *Detroit* v. *Corey*, 9 Mich. 165; *Comm'rs* v. *Mighels*, 7 Ohio St. 109; 2 Dillon on Mun. Corp. 872; *Morey* v. *Newfane*, 8 Barb. 648, 651; *Russell* v. *Men of Devon*, 2 T. R. 667; *Bartlett* v. *Crozier*, 17 Johns. 438; *Riddle* v. *Prop. of Locks*, 7 Mass. 169; *Mower* v. *Leicester*, id. 247; *Conrad* v. *Ithaca*, 16 N. Y. 159, 161, 170, 171; *Hickock* v. *Plattsburg*, id. 610.) The board of education is not within the rules upon which municipal liability for neglect is predicated. (*Bigelow* v. *Randolph*, 14 Gray, 544; *Hallenbeck* v. *Winnebago Co.* [Ill.], 10 Rep. 301; *Freeholders* v. *Strader*, 3 Harrison [N. J.], 121; *Murphy* v. *Comm'rs of Em.*, 28 N. Y. 142; Story on Agency, § 319; Story on Bailments, § 462; *Seymour* v. *Van Slyck*, 8 Wend. 403, 422; *U. S.* v. *Kirkpatrick*, 9 Wheat. 735; *Dox* v. *Postmaster*, 1 Peters, 318; *Whitfield* v. *Desprew*, Cowp. 342; Story on Agency, § 319; *Mead* v. *New Haven*, 40 Conn. 72; *Brown* v. *Vinalhaven*, 65 Me. 402; *Mitchell* v. *Rockland*, 52 id. 118; 2 Dillon on Mun. Corp. 875; *Baily* v. *The Mayor*, 3 Hill, 531; 2 Denio, 433, 446; *O'Meara* v. *The Mayor*, 1 Daly, 425; *Richmond* v. *Long*, 17 Gratt. 374; *Sherbourn* v. *Yuba*, 21 Cal. 113.)

ANDREWS, J. This action is brought against the Board of Education of the city of New York, to recover damages for an injury sustained by the plaintiff, from falling into an excavation in the yard of premises, occupied as a ward school. The plaintiff, at the time of the accident, was a scholar, attending the school. The excavation into which the plaintiff fell, communicated with the cellar of the school

building, and was provided with an ordinary grating, and the evidence tends to show that the opening had been unnecessarily and negligently left uncovered, at the time of the accident. The masons employed by the ward trustees to make repairs to the school building had used the cellar for the deposit of materials, which, as they were required for use, were hoisted through this opening. The evidence leaves it in doubt, whether the negligence in leaving the excavation uncovered, was that of the janitor, who had charge of the building, or of the masons employed to make the repairs.

The only point necessary to be determined in this case is, whether, assuming that the leaving the opening uncovered was a negligent act, either of the janitor or of the masons, the defendant is liable for the injury sustained by the plaintiff. Neither the janitor nor the masons were employed by the defendant, and we may eliminate from the inquiry here, the question whether the defendant would be liable upon the doctrine of *respondeat superior*, in case the janitor and masons had been its immediate employes and servants.

The Board of Education of the city of New York, was originally created by chapter 386 of the Laws of 1851. That act prescribed a scheme for carrying on the work of public education in the city of New York, the general features of which were, the election in each ward of commissioners, to constitute a board of education, having general supervisory jurisdiction over all the schools in the city, and of ward trustees in each ward, with special jurisdiction and supervision of the schools in their respective wards. The act defined the powers of the board and of the ward trustees, and declared that for the purposes of the act, the board "shall possess the powers and privileges of a corporation." (§ 2, sub. 8.) The act of 1851 was amended by subsequent enactments. The original act (§ 25) provided that the title to all school property purchased with school moneys, or money received by taxation, in the city, should be vested in the mayor, aldermen, or commonalty. This section was amended by section 14 of

chapter 301 of the Laws of 1853, by adding the provision that school property, " shall be under the care and control of the board of education, for the purpose of public education, and all suits in relation to the same shall be brought in the name of said board." It was apparently one purpose of this pro- vision to rebut an inference of any power in the city govern- ment to control the schools, arising from the clause in the original section, vesting in the city, title to the school prop- erty. By the act of 1851 (§ 10, sub. 2) the ward trustees were " to have the safe-keeping of all the property belonging to the ward schools in their respective wards." Their author- ity was enlarged by chapter 101 of the Laws of 1854. Section 10 of that act (which amends section 10 of the act of 1851) pro- vides that it shall be the duty of the trustees for each ward, and they shall have the power, *first,* " to have the safe-keeping of all the *premises* and other property, used for or belonging to the ward schools in their respective wards," and *second,* " under such general rules and regulations as the board of education may adopt, to contract with and employ teachers and janitors in the said schools, and conduct and manage the same, and furnish all needful supplies therefor, etc; and make all needful *repairs,* alterations and additions in and to the school premises, pro- vided that if the cost of any such repairs, alteration or addition shall exceed the sum of $200, the same shall be made by con- tract," etc. A concurrent power to make repairs of school buildings, is by the second section of the same act, conferred upon the board of education, which empowers the board " to employ, under the superintendent of school buildings, necessary workmen, and provide necessary materials for repairing, etc., school buildings," with the proviso that " this provision shall not be construed to compel the trustees of any ward to use or employ such workmen or materials for any purpose whatever." The repairs being made when this accident happened, were not made by the board, under the power conferred by this section. The present board of education was created by chapter 112 of the Laws of 1873. It succeeds to all the powers of the de- partment of public instruction created by chapter 574 of the

Laws of 1871 (§ 2), which department possessed the powers conferred by the previous acts upon the board of education, as defined in the act of 1851 and subsequent statutes. (Chap. 574, Laws of 1871, § 7.) The powers and duties of the present board of education, and of the ward trustees, are, therefore, the same as those possessed by the board of education under the statute of 1851, and the subsequent amendments.

From this reference to the statutes it will be seen, that while the board of education is vested with the general control and care of the school buildings and property, "for the purposes of public education," the especial care and safe-keeping of school premises in the respective wards, is committed to the ward trustees, who are also authorized to appoint janitors, and make repairs of school buildings, subject to such general rules, regulations and limitations, as the board of education may prescribe. The rules adopted by the board were proved, and the rules adopted in respect to repairs, are aimed at prohibiting expenditure for this purpose, beyond a limit specified, unless with the previous sanction of the board. It is conceded that the repairs which were being done when the accident in question occurred, were ordered by the trustees of the ward. The trustees employed the workmen. The board of education neither employed them, nor had power to control or discharge them. The workmen and janitor, were selected and hired by the ward trustees, and were paid out of the public funds. The board of education was not the master, and it cannot be held liable within the rule of *respondeat superior*. The ward trustees were public officers, with powers prescribed by the statute, and were not the agents of the board of education to employ workmen or otherwise. It is true that under the act of 1873, they are appointed by the board of education, whereas under prior statutes they were elective officers. But this did not make them the servants or agents of the board which appointed them. Their general authority and their power to make repairs, was not derived from the defendant but from the law. In *Maximilian* v. *The Mayor* (62 N. Y. 160), it was held that the fact, that the commissioners of public charities and correction

were appointed by municipal authorities, did not make them the agents of the city. The duty of the safe-keeping of the ward school buildings is laid upon the ward trustees, and in making repairs and employing workmen and janitors, they act as independent public officers. For their acts or the acts of servants employed by them, the board of education, which is a creation of the sovereign authority of the State, organized to exercise a purely public function, and agency, for the public good, having no treasury, and receiving no private corporate benefit from the functions and powers conferred, is not liable, either upon principle or authority.

The judgment should be affirmed.

All concur.

Judgment affirmed.