(80 App. Div. 480.)

GUNNISON v. BOARD OF EDUCATION OF CITY OF NEW YORK.

(Supreme Court, Appellate Division, Second Department.     March 26, 1903.)

1. GREATER NEW YORK CHARTER—BOARD OF EDUCATION—CAPACITY TO BE SUED.

The Greater New York Charter (Laws 1897, p. 381, c. 378) § 1062, created the board of education of the city, and provided that it should have the management of the public schools and public school system of the city.   By section 1063 the board was declared to "possess the powers and privileges of a corporation."   Though section 1055 vested in the city the title of school property, the care and control thereof were preserved in the board of education, and it was declared that suits in relation to such property should be brought in the name of the board.   Section 1060 provided for the raising of the special school fund which section 1065 required to be administered by the board, and section 1060 declared that the board should take and receive all moneys appropriated for educational purposes.   *Held*, that an action to recover teachers' salaries was properly brought against the board of education, and not against the city.

2. SAME.

Since the board of education of the city of New York was created as a new and distinct corporation by the Greater New York charter (Laws 1897. c. 378), and was not a public corporation united and consolidated in the city of New York by such charter, section 1614 thereof, providing that all future suits against the city of New York, as thereby constituted. or against any of the municipal or public corporations united or consolidated therewith, should be brought in the corporate name of the city of New York, did not preclude the maintenance of a suit for teachers' salaries against the board of education of the city.

Appeal from Special Term, Kings County.

Action by Walter B. Gunnison against the board of education of the city of New York.   From an interlocutory judgment sustaining a demurrer to the complaint, plaintiff appeals.   Reversed.

Argued before GOODRICH, P. J., and BARTLETT, JENKS, WOODWARD, and HIRSCHBERG, JJ.

Ira Leo Bamberger (Benjamin N. Cardozo, on the brief), for appellant.

James McKeen, for respondent.

HIRSCHBERG, J.   The plaintiff sues the board of education of the city of New York to recover a salary claimed to be due to him, as a teacher in one of the public schools, for services rendered in the year 1899, and salaries for services rendered in or before that year by other teachers, who have assigned their claims to him.   The defendant demurred on two grounds, viz., first, that the city of New York, and not the board of education, was the proper party defendant; and, second, that the complaint does not state facts sufficient to constitute a cause of action.   The interlocutory judgment sustains the demurrer on the first ground only, and only the question presented thereby has been argued on the appeal.   The grounds of the decision at the Special Term are stated by the learned trial justice as follows:

"The board of education owns no property, and title to all its property is vested in the city of New York. The board of education is empowered to bring suits in relation to its property in its own name, but no provision is made that the board of education may be sued as such. The board of education can neither pay nor audit claims against it. It may fix salaries, but cannot pay them. When fixed, the salaries become a charge against the city of New York."

The soundness of the reasoning will determine the accuracy of the decision, but the examination of the question necessarily involves the history of the legislation upon the subject, the general scheme of the charter in relation to it, and the trend of prior adjudications. On such examination it will be apparent that the provisions of the present city charter differ in no material respect from those of the various statutes under which the department of public education has heretofore been organized in the city of New York, and that the features of the scheme to which attention is called in the decision have been held by the courts to be entirely consistent with the right of action claimed by the plaintiff.

The board of education of the city of New York was originally created by chapter 386, p. 734, of the Laws of 1851. That law was entitled "An act to amend, consolidate and reduce to one act, the various acts relative to the common schools of the city of New York;" and it prescribed a general scheme for carrying on the work of public education in the city, which has survived changes in the mere matter of detail embraced in subsequent legislation. By section 2, subd. 8, it was provided that, "for the purposes of this act, the said board shall possess the powers and privileges of a corporation"; and by section 25 it was declared that "the title to all school property, real and personal, purchased with any moneys derived from the distribution or apportionment of the school moneys, or raised by taxation in the city of New York, shall be vested in the mayor, aldermen and commonalty of said city." By chapter 301, p. 635, of the Laws of 1853, section 25 was amended by adding to the part I have quoted the words, "but shall be under the care and control of the board of education, for the purpose of public education, and all suits in relation to the same shall be brought in the name of said board." Referring to this amendment in Donovan v. Board of Education of City of N. Y., 85 N. Y. 117, 121, Judge Andrews said:

"It was apparently one purpose of this provision to rebut an inference of any power in the city government to control the schools, arising from the clause in the original section vesting in the city title to the school property."

By the original act the board of education was further empowered to regulate and control the employment of teachers by the ward trustees (section 10, subd. 2), and to draw drafts upon the city chamberlain, payable to the persons entitled to receive the same for the disbursement of the school moneys, which were all required to be paid, until so disbursed, into the city treasury (section 16).

By chapter 137, p. 366, of the Laws of 1870, the local government of the city was reorganized, but without affecting the board of education, or its powers and functions. By chapter 574, p. 1231, of the Laws of 1871, however, that act was amended by section 7, creating a department to be called the "Department of Public Instruction," and to have

under that designation the same powers and to discharge the same duties which were at that time vested in the board of education. While there was nothing in the act of 1871 declaring in express terms that the new department was vested with corporate powers, the language used is certainly broad enough to embrace such powers in the general devolution of duty and responsibility from the former board of education to the then newly created branch of the local government. This appears to have been the view taken by Judge Miller in Ham v. Mayor, 70 N. Y. 459, 462, and it does not appear to have been doubted at any time, so far as is apparent in the recorded municipal litigation.

By the provisions of the Greater New York charter (chapter 378, Laws 1897) the chief features of the scheme of educational control referred to have been re-enacted, either in substance or in identical terms. A number of administrative departments are created by section 96— the department of education among others—and by chapter 18 of the act the general management of the schools under the control of that department is provided for. By section 1062 the present board of education is constituted, and is given "the management and control of the public schools and of the public school system of the city." By section 1063 such board, for the purposes of the chapter of the charter devoted to education, is expressly declared to "possess the powers and privileges of a corporation." Corporate powers are conferred upon no other of the departments of the city government. By section 1055 the title to the school property, it is true, is continued vested in the city; but the care and control of such property are not only preserved in the board of education, but the provision of the amendment of 1853 is re-enacted in substantially the same words, by the provision that "suits in relation to such property shall be brought in the name of the said board of education." Section 1060 provides for raising the "special school fund" which by section 1065 is to be "administered" by the board of education, while section 1060 further provides that said board "shall have power to take and to receive, and shall take and receive all moneys appropriated or available for educational purposes in the city of New York." Other provisions provide for the appointment of teachers, the fixing of salaries, etc.; and by section 1058 all the duties, rights, and powers heretofore existing in the various school boards and trustees in the different municipalities consolidated into the greater city are devolved in most ample terms upon the board of education, as created by the act.

The amendments embodied in the amended charter (chapter 466, Laws 1901) amplify the powers of the board in some particulars, but contain nothing which is deemed of special significance in the determination of the question under consideration. By section 149 of the charter the control of the fiscal concerns of the municipal corporation is vested in the department of finance, and payments by or on behalf of such corporation, "except as otherwise specially provided," are to be made on vouchers through the disbursing officer of that department. Attention has been called to no provision of the charter which in express terms requires the board of education to provide for the payment of its contracts through that department, or in any other way than by drafts upon the treasury, or formerly drawn upon the comp-

troller, as its present representative, and payable to the order of the person or persons entitled to receive the money. But it will be assumed that the charter contemplates the payment of teachers' wages, as represented upon proper pay rolls, after certification and audit in conformity with the general provisions of section 149, giving supervision to the comptroller, without authority to dispute the amount, or question the performance of duty upon the part of the payees. Under the former laws it was held that the fact that the funds were in the general treasury was no reason why the board of education could not be sued upon its contracts, and those decisions are equally authoritative in the conditions now prevailing.

Gildersleeve v. Board of Education, 17 Abb. Prac. 201, was an action to recover teachers' wages under the act of 1851; and it was held that the board was subject to all the obligations incident to the exercise of the privileges and powers of a corporation, including the right to sue and to be sued. The same view would seem to be involved in the decision of Coulter v. Board of Education, 63 N. Y. 365, which was an action on a contract to construct a schoolhouse. Both cases are cited with approval in Ham v. Mayor, supra; the court saying in reference to the board of education, as constituted by the act of 1851 (page 462):

"The latter board was a corporation authorized to hold property for educational purposes, and was vested with the management of the schools, and control over the school buildings. Chapter 386, p. 734, Laws 1851. Upon a report of the amount required to meet necessary expenses, the board of supervisors were required to raise the same. Id. c. 386, p. 736, § 3. It could also sue and be sued as an independent corporate body, and it is held in some of the reported cases that the city was not liable for its debts, nor its contracts or torts. Terry v. Mayor, etc., 8 Bosw. 504; Treadwell v. Mayor, etc., 1 Daly, 123. It might also be sued and a recovery had upon its contract. Gildersleeve v. Board of Education, 17 Abb. Prac. 201; Coulter v. Same, 63 N. Y. 365."

## In Dannat v. Mayor, 66 N. Y. 585, Judge Earl said (page 587):

"The sole question to be determined upon this appeal is whether the city of New York can be sued directly upon a contract made with the department of public instruction of the city in the year 1872 for building a schoolhouse."

The conclusion reached was that the city could not be sued upon such a contract, but that, if an action was necessary in order to establish the validity of a disputed claim, it must be brought against the board of education. The court said (page 588):

"Under the system thus provided, there was but one way for the board of education to discharge the obligations assumed by its contracts, and that was by a draft drawn as specified in section 16 upon the city chamberlain; and, so long as it was willing to give such a draft, its creditors could make no further claim upon it. If it was willing to give the draft, and had done all the law required of it, it could not be sued. It could not draw the money, as the draft is required to be made payable to the person entitled to receive the same, and hence a suit to compel it to pay would be an idle proceeding and in contravention of the statute. But if it refused to give the draft, then the creditor's remedy would be against it. If the claim was undisputed, he might, by mandamus, compel the giving of the draft. If the claim was disputed, he could sue the board of education in its corporate capacity, and, having thus established his claim, then procure his draft. But he would have no claim

against the city until he had in some way obtained such a draft as the law required. When he came with such a draft, it would be the duty of the chamberlain to pay."

Applying the reasoning of the case last cited to the existing status of the board, it is difficult to see why the same conclusion should not be reached. The maintenance of the action is not for the purpose of procuring a judgment to be collected in the ordinary way—by levy and execution—but is only for the purpose of obtaining the judicial establishment of the validity of the claim. The nature of the process requisite for the collection of the claim when established is immaterial. But it would seem logical that the issue of validity should be contested, if it is to be contested, by that independent corporate entity by which the liability was created, and its terms and conditions fixed, under whose supervision the contract has been performed, and by whom the law requires the funds to be administered which are ultimately chargeable with payment. This is the view taken by both bench and bar for half a century; the Court of Appeals having as recently as the year 1901, in the case of Steinson v. Board of Education of N. Y., 165 N. Y. 431, 59 N. E. 300, awarded final judgment in favor of a teacher, in an action to recover unpaid salary, wherein no suggestion appears to have been made by any one at any stage of the litigation to the effect that the corporate powers of the defendant were not broad enough to justify an action against it to enforce its obligations.

It is further urged in support of the interlocutory judgment that section 1614 of the charter of 1897, re-enacted in the amended charter of 1901, is controlling. That section provides that:

"All future suits by or against the city of New York as herein constituted or against any of the municipal and public corporations in this act united and consolidated shall be in the corporate name of 'The City of New York.'"

It is a sufficient answer to this suggestion, that, although the defendant succeeds to all the powers and duties of the various local boards of education existing before consolidation, it is created as a new and distinct corporation by the terms of the charter; the prior organizations as such not being united and consolidated into it, within the meaning of the section—that meaning having relation chiefly, if not solely, to the union of territory, and of territorial, municipal, and public corporations. Certainly, if it has any relation to this defendant, the section must be read in connection and in harmony with the other provisions of the charter to which reference has been made, and from which, under the authorities, the right to maintain this action seems undoubted. Any other view would create the anomaly that, while the board of education would be a proper and necessary party plaintiff in an action brought upon a contract in relation to school property, it could not be sued upon such a contract, or to enforce any claim or right thereunder. This view does not appear to have been taken in the court below in reference to section 1614, and should not be adopted in the absence of precise language, incapable of any other construction.

It follows that the interlocutory judgment should be reversed, with costs, and the demurrer overruled, with costs, but with leave to the defendant to answer upon payment. All concur.