WAHRMAN v. BOARD OF EDUCATION OF CITY OF NEW YORK et al.

(Supreme Court, Appellate Division, Second Department. March 9, 1906.)

1. MUNICIPAL CORPORATIONS — NEGLIGENCE — DANGEROUS PREMISES — SCHOOL BUILDING—QUESTIONS FOR JURY.

In an action against the board of education of the city of New York for injuries to a pupil caused by the fall of plaster from the ceiling of the schoolroom on him, evidence *held* to require submission to the jury of the questions whether the board knew, or ought to have known, that the room was unsafe, whether a careful and proper inspection would have given such knowledge, and whether the board was negligent in permitting children to occupy the room while it was being repaired.

2. SAME—SCHOOL BOARD—CARE OF SCHOOL BUILDINGS—MINISTERIAL DUTIES—NEGLIGENCE—LIABILITY FOR INJURIES. .

Greater New York Charter, Laws 1901, pp. 449, 451, 452, 454, 455, 457, 459, 462, c. 466, §§ 1055, 1060, 1061, 1062, 1067, 1068, 1071, 1073, 1078, 1080, confer on the board of education of the city of New York possession and control and management of all school buildings in the city, and charge the board with the duty of repairing and keeping them in proper repair and in safe condition. The board is thereby also authorized to appoint employés, prescribe the duties of all subordinates, fix and pay their compensation, and remove them at any time for cause. *Held*, that the management of the school buildings in the city is a ministerial duty, and not a governmental power exercised by the board, and that it is therefore liable for injuries to a pupil caused by its failure to keep such buildings in a reasonably safe condition.

3. MASTER AND SERVANT—RELATION.

The relation of master and servant existed between the board of education and such of its subordinates as were employed to perform the duty of inspecting school buildings.

Jenks and Miller, JJ., dissenting.

Appeal from Special Term, Kings County.

Action by Alfred Wahrman, by Adolphus Rothmiller, his guardian ad litem, against the board of education of the city of New York, impleaded with the city of New York. From a judgment in favor of plaintiff, and from an order denying defendant's motion for a new trial and granting plaintiff an extra allowance, defendant appeals. Affirmed.

Argued before HIRSCHBERG, P. J., and WOODWARD, JENKS, RICH, and MILLER, JJ.

James D. Bell (William Hughes, on the brief), for appellant.
Edmund Fletcher Driggs, for respondent.

RICH, J. The plaintiff, an infant 12 years of age, has recovered for a judgment for a personal injury sustained on May 27, 1904, while attending a public school in the city of New York, caused by plaster of the ceiling of the schoolroom falling upon him. It is not disputed that he was a scholar attending the school, that the plaster fell upon him inflicting a very severe and permanent injury, and that he was without fault. It is contended by the appellant that it cannot be held liable for the negligence of its servants or agents in allowing scholars to occupy an unsafe school building, and the condition that occasioned the accident was not such an apparent defect as to constitute notice of danger sufficient to charge the defendant with negligence. At the close of plaintiff's case, and again at the close of the evidence, the defendant moved to dismiss upon the grounds: First, that the plaintiff had not shown that at the time of the accident, nor for several months before it, there was any condition of the school building that constituted negligence on the part of the board of education, or any of its subordinates, or that gave them any notice or idea that it was dangerous to have scholars there; and, second, that the defendant was not responsible for any of the acts of its subordinates, and that the doctrine of respondeat superior does not apply to the defendant, that there was no evidence to connect the board of education with any obligation to do anything to this building to put it in condition, and also that

in no case of this kind is the board of education responsible for the tortious acts of any of its officers or agents. The motions were denied and exceptions taken. .

The learned trial justice charged the jury:

"If you find that the board of education was guilty of negligence in permitting the occupation of this room by the pupils of this school on the 27th of May, 1904, by reason of the condition of the ceiling, and what they knew, or ought to have known, as to its condition, then the plaintiff is entitled to recover. The negligence which is the basis of the right to recover, if any, is the negligence in permitting it to be occupied for the purposes of a schoolroom. Their own inspector says that he had inspected it two days before, and every week prior to that; and he admitted that the ceiling would not be expected to fall, unless it showed evident indications of being about to fall for a considerable period before the thing actually occurred. In view of all the evidence in the case, you must determine whether the board of education, remembering that it acts in this matter by its servants, knew or ought to have known of the probability of this accident, and to have closed the door of that room to the pupils on that day. If you find that they were in that respect negligent, then they are liable."

No requests for additional instructions were made. To so much of the charge as instructed the jury "that, if the board of education is liable through the acts of its servants, plaintiff may recover," the defendant excepted. .

These exceptions present the only questions for our consideration. There is sufficient evidence in the case warranting its submission to the jury. It appeared from the evidence that in 1901 an inspector of defendant had ascertained that the building in which this accident occurred had sagged in the center, causing the ceilings to sag and the roof to expand. The floors had sagged and the ceilings under the floors. He reported this condition to the defendant. The same inspector inspected the building again in 1903 and found the ceilings and side walls were cracked, the ceilings sagged the same as in 1901, the longitudinal girders supporting a portion of the beams were deflected and twisted, causing the sagging of the partitions and cracking of the plaster of the walls and ceilings, and the building was apparently settling all the time. He testified that these conditions would cause the plaster of the ceilings at some time to fall. The walls supporting the roof had been forced outward so as to entirely break the brick bond at the upper line of the floor beams, and the rafters had spread so as to break the bond of the brickwork on an entire line. These conditions he also reported to the defendant. The principal of the school had frequently, during the year 1903, made reports to the defendant in reference to the condition of the building. In December of that year a portion of the plaster in the same room in which plaintiff was injured had fallen, and that fact he had reported to the defendant. He testifies that he had made special efforts ever since he had been there to better the condition of the building and had reported several falls of plaster from ceilings which had not resulted in injury to pupils. Finally, at his particular request, as he testifies, "to make the whole building safe," a contract was made for repairs, and work was commenced late in the fall of 1903 and had not been completed at the time of the accident. An inspector of repairs was present

every day in charge of the work, and the work was in progress when the plaintiff was injured. An inspector named Lord had inspected the building in the early part of February, 1904, took note of all the bad features, and found that there were several spots in the ceilings not in good condition, and he reported these to the superintendent of school buildings. An inspector of repairs of school buildings is not named in the charter of New York. He was, however, undoubtedly employed or appointed and his duties specified by the defendant, under the provisions of the charter to which attention will be directed later.

It was a question for the jury to determine whether the defendant knew or ought to have known that the room in this school building was unsafe and its occupancy dangerous by reason of the condition of its ceiling, whether a careful and proper inspection and examination by its inspectors would have given it this knowledge, and, if it would, whether they were negligent in permitting its occupancy by children during the time repairs were in progress; and the question was properly submitted to them by the trial justice, providing, of course, that the defendant could be held liable for its negligence or the negligence of its servants and employés to whom it had trusted the inspection and supervision of its schoolhouses.

Did the defendant owe plaintiff any duty in respect to the condition of repair of this schoolhouse? Section 1055 of the Greater New York Charter (chapter 466, p. 449, Laws 1901) provides that the title to all property, real and personal, owned or acquired for school or educational purposes (except the State Normal School at Jamaica), as well as the title to all property purchased for school or educational purposes, whether derived by the issue of bonds or raised by taxation, shall be vested in the city of New York, but shall be under the care and control of the board of education for the purposes of public education, recreation, and other public uses in said city, and suits in relation to such property must be brought in the name of the board. By section 1060 the board of education is required to administer all money appropriated or available for educational purposes in said city. Section 1061 vests in the board management and control of the public schools of the city and of the public school system, subject to the general statutes of the state. By section 1062 the board is given the powers and privileges of a corporation. By section 1067 the board is given power to appoint and fix and regulate the salaries and compensation of a number of officers including a "superintendent of school buildings," who is required to be an architect of experience, and it may remove such officers at any time for cause. Section 1068 gives such board power to enact by-laws, rules, and regulations for the proper execution of all duties devolved upon it, its members, committees, and the several local schoolboards, for the transaction of all business, "for defining the duties of * * * the superintendent of school buildings" and its other subordinates. Section 1071 requires the board to make provision for the organization in the various boroughs of such branches as they may deem necessary in the bureaus of the superintendents of school buildings, and to make such provisions

by its by-laws "as will secure prompt and efficient service · * * *
for the alteration and repair of existing buildings, * * * and for
the execution and carrying into effect of all matters and things, author-
ity for which shall have been granted by the board." The section
then provides:

"Subject to such by-laws, the superintendent of school buildings shall be
the executive officer of the board in respect to all matters relating to the bu-
reau of buildings, or in respect to which he is charged with duties under the
provisions of this act. He shall advertise for bids for the erection, ·alteration
or repair of any building to be used for educational purposes in the city of
New York which has been authorized by the board of education."

Section 1073 authorizes· the superintendent of school buildings to
appoint a deputy for each of the boroughs in the city, and:

"With the authority of the board of education, he may empower a deputy
superintendent in his place and stead to execute all the duties of superintend-
ent and such other duties as the board of education may, by regulation, pre-
scribe. All plans for new school buildings, for additions to school buildings,
and for structural changes in old buildings, shall be passed upon, and must
be approved by the superintendent of school buildings, who shall submit such
plans to the board of education, whose action thereon shall be final."

Section 1078 requires the city superintendent of schools to visit the
schools as often as he can consistently with his other duties, and in-
quire into several matters, among which is "the condition of the school-
houses," which he is required to report to the board. The same duty
is devolved upon the district superintendents by section 1080. They
are required to· report the result of their inquiry to the city superin-
tendent, who is directed to transmit such parts of said reports as he
may consider necessary or proper to the board of education and the
local school boards of the district for which the same are made. Pro-
vision is made by section 1087 for the division of the city into local
school districts and the appointment, by the board of education, of
local school boards, among whose duties, as defined by section 1088,
is that of visiting, at least, once in each quarter all the schools in their
district and inspecting the same in respect to "the cleanliness, safety,
warming, ventilation and comfort of school premises," and they are
required to "call the attention of the board of education, without de-
lay, to every matter requiring· official action. * * * They shall
also recommend * * * such repairs or alterations of school build- ·
ings, as they deem necessary or desirable."

From these provisions it is apparent that the defendant has the pos-
session and absolute control and management of·all school buildings
in the city of New York and is charged with the duty of repairing and
keeping them in proper repair and safe condition.. It appoints, em-
ploys, and prescribes the duties of all subordinates by whom this work
and supervision is to be done and exercised, establishes and pays
their compensation, and is vested with the power of removal which it
may at any time exercise for cause. They are under the sole control
of the defendant and accountable to it for the manner in which their
duties are discharged. Charged with this duty and possessed of these
powers, the relation of master and servant exists between the de-
fendant and·such of its subordinates.

It is the settled law of this state that, in reference to its system of public education, the municipal agencies of the state act for the sovereign and are not accountable in damages for the negligent manner in which they discharge their governmental duties or for the manner in which they carry on their work, unless other duties are also violated; but the plaintiff's case does not rest upon the assumed governmental obligation to benefit the public by education, but upon the local and ministerial duty resting upon the defendant and all other persons and corporations who possess and manage property upon which buildings are erected and maintained, to keep them in such reasonably safe condition that persons exercising care will not be injured while in them, whether by necessity or invitation.

The cases cited by the learned counsel for the appellant establish the well-known proposition that the city of New York is not liable for the negligence of the board of education, its officers or employés, in their management and care of school buildings; but they do not sustain the contention that this defendant is not liable.

In Donovan v. Board of Education, 85 N. Y. 117, it was held that the defendant was not liable because the statute then in force committed the care and safekeeping of school premises to ward trustees, to whom was also given the power to appoint janitors and make repairs. The repairs being made at the time of the accident were ordered by the ward trustees, who employed the workmen and had appointed the janitor of the building. The negligence alleged was that of the janitor or masons employed in doing the work. The defendant neither employed or appointed them or had power to control or discharge them. They were public officers with powers prescribed by the statute which they were then exercising. They were not the agents, servants, or employés of the defendant, and the court held that in making repairs, employing workmen, and appointing janitors, the ward trustees acted as independent public officers; that the relation of master and servant did not exist between them and the board of education, and for their acts or negligence the board was not liable.

In Brown v. City of New York, 32 Misc. Rep. 571, 66 N. Y. Supp. 382, the court declared the general rule that the city is not liable for the negligence of its board of education created by statute and thereby made solely responsible for the care and control of school buildings, which law was recognized by the trial court in this action, and the complaint accordingly dismissed as to the defendant city. The same distinction exists in Ham v. Mayor, 70 N. Y. 459. In neither of these cases is there any intimation that, upon the facts established in the case at bar, the board of education would not have been liable. It possessed and absolutely controlled the school building in which the injury was received; it was charged with the duty of maintaining and keeping it in a reasonably safe and suitable condition and free from danger to those lawfully in it; and, for a failure to discharge this duty, or negligence in its performance resulting in an injury to a pupil attending school therein, free from negligence himself, it is liable. Galvin v. Mayor, etc., of New York, 112 N. Y. 223, 226, 19 N. E. 675; Vincent v. City of Brooklyn, 31 Hun, 122; Briegel v. Philadelphia,

135 Pa. 451, 19 Atl. 1038; 20 Am. St. Rep. 885; Carington v. St. Louis, 89 Mo. 208, 1 S. W. 240, 58 Am. Rep. 108.

The judgment and order must be affirmed, with costs. All concur, except JENKS and MILLER, JJ., who dissent.

