## FLOYES, for Use and Benefit of FLOYES, v. CITY OF MONROE.
### No. 6075.

Court of Appeal of Louisiana.
Second Circuit.

Dec. 1, 1939.

Rehearing Denied Jan. 1, 1940.

Writ of Certiorari and Review Denied March 4, 1940.

Oliver & Digby, of Monroe, for appellant.

G. Allen Kimball, of Monroe, for appellee.

TALIAFERRO, Judge.

Plaintiff's eleven year old son, while playing with some companions on the grounds of the Central Grammar School in the City of Monroe, Louisiana, fell to the ground, and in so doing, struck his knee against a water cut-off box. A deep wound three or four inches long across the knee was inflicted. The father, for the use and benefit of the son, sues the City of Monroe to recover damages for the boy's pain, suffering and mental anguish; for loss of time from school; and for permanent disfigurement.

Plaintiff alleges, as a basis for the suit, that the City of Monroe is a municipal corporation, under the laws of the State, and supplies water to its citizens and to private and public institutions for profit; that the cut-off box was installed by the City and that there was a depression in the ground around the box, caused from the settling of the soil; that his son stepped into this depression, lost balance and fell, with the results above mentioned; that the accident happened because of the City's negligence in these respects, to-wit:

(a) Installing the cut-off box on the school ground, whereas, it should have been installed in the sidewalk as is customary.

(b) Allowing the depression around the cut-off box to remain unfilled for months and to become obscure from growth of

grass, thereby creating a hazard for children attending said school and others who chose to be upon said ground.

It is further alleged that the City's employees had knowledge of the existence of the depression and its dangerous condition, and that its officers and agents knew or should have known that said cut-off box, constructed as and where it was, would create a constant hazard to all persons upon said school ground.

And, lastly, it is alleged that the City recognized its negligence in the respects mentioned, by promptly having the depression filled after the accident, and by paying the sanitarium bill incurred in behalf of the child.

Defendant admits that the cut-off box was installed by it twenty years or more ago, for the free use of the Central Grammar School, but avers that thereafter the maintenance of the box and the upkeep of the ground about it devolved upon the school system of the City; that it was under no legal duty to maintain the box or the ground about it, and, in fact, did not do so at any time after its installation. The City denied that the box and the ground about it, at time of the accident, constituted a hazard, as alleged, and denies that plaintiff's son was injured because of any negligence of the City of Monroe nor of its school authorities; that if the alleged hazard did exist, which is denied, no officer, agent or employee of the City had knowledge of such fact.

Further answering, defendant avers that it is expressly authorized by law to, and in fact does, maintain, operate and support a system of free public schools within its territorial limits and that the Central Grammar School, which plaintiff's son attended, is a part of that system; that the conduct, operation and maintenance of said school system, including the maintenance of the playgrounds adjacent to the schools, for the benefit of the children of the City are but the exercise of governmental functions for which no charge is made; no pecuniary compensation or profit is received or expected; and, therefore, no liability attaches to defendant on account of injuries to the school children while attending school, whether injured in the buildings or upon the playgrounds.

Defendant admits that it paid the sanitarium bill incurred in treating plaintiff's son, but denies that in so doing it intended to, nor in fact did, admit liability in damages for his injuries.

The City appealed from a judgment of $400 in favor of plaintiff.

The cut-off box in question was installed so long ago that persons connected with the Central Grammar School for many years, and city employees for like time, do not recall the time when it was done. The box is located some five feet east of the sidewalk on the school's playground. It had not been used for years, if ever used. No one can account for its location, as cut-offs of that character are almost invariably placed in the sidewalks. This kind is no longer used by the City. It is obsolete. But for the City's admission that its water department installed the box, a strong inference would arise, due to its location, that the school authorities did so.

The top of this box was level with the surrounding ground. The keeper of the grounds regularly ran a lawn mower over it. The duty of maintaining the school ground was assumed and discharged by the school authorities.

By actual measurement, the depression, at the time the boy was injured, was only 10″ in diameter and 1½″ deep. The box was in about the center of the depression, therefore, 1½″ of it only extended above the bottom of the depression. The situs of the box was used by the school boys as first base when playing ball.

We are satisfied, as was testified by one of these boys, that the small quantity of dirt causing the depression was removed by these boys to make the base the more conspicuous. It had existed long enough for grass to cover it. No one connected with the Central Grammar School had observed its condition. It was certainly not obvious as a hazard, if such may be said of it. Plaintiff's son frankly admits that he was well aware of the conditions about the box as he had played ball around it daily. However, contributory negligence is not pleaded.

We entertain serious doubt that the City was to any extent guilty of actionable negligence for having allowed the shallow depression about the box to continue for a short length of time, such a time as is indicated from the record. To convict the City of negligence on this score would be tantamount to requiring it to daily inspect the school ground to ascertain if the children had dug or otherwise created holes, depres-

sions or shallow pits therein, and to fill them. However, we prefer to rest a decision of the case upon the well-founded defense that if there was actionable negligence on the City's part in constructing and locating the cut-off box, as was done, and allowing the shallow depression to remain about it, such negligence was committed by it through its employees, agents and servants, while in the discharge of and as an incident to the exercise by it of a governmental function, delegated by the State.

The City of Monroe is presently operating under legislative charter, Act No. 47 of 1900, as amended. Among the powers conferred by this act upon the City is that which relates to the establishment, maintenance and support of a public school system therein, which shall be administered by a school board composed of the mayor, as ex officio chairman, and four other citizens, residents of the City, elected by the people. The City is authorized to finance the school system and all schools established thereunder by appropriations from year to year from proceeds of taxes levied and collected by it. In keeping with the legislative grant of power, the City has for many years, and does at the present time, maintain a splendid system of free schools therein for the education of the children of its citizenship. Water, free of charge, is supplied to each school by the City. Such supply is an indispensable necessity to the proper conduct of any school. It is as important to the satisfactory conduct thereof as are heat and light. Therefore, this cut-off box, when installed, was designed to regulate and control, in whole or part, the water supply of the Central Grammar School, owned by the City.

Mr. Marr, in his splendid work, "Political Corporation Under Louisiana Law", has this to say as regards that class of corporations, viz., "The powers and obligations of political corporations are two fold in character;—Those that are of a public nature and those that are of a private nature. As to the public character of its powers and obligations the political corporation represents the State—discharging duties incumbent on the State, and when it acts as the agent of the State, it becomes the representative of sovereignty, and is not answerable for the nonfeasance or malfeasance of its public officers. As to the private character of its powers and obligations, the political corporation represents the pecuniary and private interests of individuals, and the rules which govern the responsibility of individuals are properly applicable."

Many cases are cited in the footnote to support the rule of law so well and tersely stated. There is, however, one exception to the well-recognized rule. It does not apply to cases wherein persons acting with ordinary prudence are injured from the failure of a municipality to keep its streets and sidewalks in repair or in reasonably good condition for travel. Clinton v. City of West Monroe, La.App., 187 So. 561, 564, and authorities therein cited; Todaro v. City of Shreveport et al., La.App., 170 So. 356, 362; Id., 187 La. 68, 174 So. 111.

This exception stands alone in the jurisprudence of this State and, but for it, a municipality could not be held responsible for damages in cases embraced within its scope.

■ The pivotal fact in the exercise of governmental functions by a municipality, delegated by the sovereign, as regards liability for torts committed by its officers and agents, is whether it is done purely as a public duty or for pecuniary profit.

The education of the youth of the State is a duty that primarily rests upon the State. Its security in all worthwhile respects, and that of its institutions, will be best served by an educated and enlightened citizenship; in fact, such a citizenship is indispensable to the prosperity and perpetuity of our democratic form of government. It is the best known guaranty against outlawry, moral degeneracy, and the susceptibility of people to experiment with untried fundamentals of government, so often advanced by demagogues, and too often, in whole or part, successful. To discharge this transcendent duty, the State, of necessity, must delegate to institutions, boards, municipalities, etc., the larger part of the task.

No Louisiana case has been cited nor found by us, wherein the operation of a public school system by a municipality as a governmental function, was urged in defense of a tort action. Such a defense has been successfully urged in cases arising in many other jurisdictions of the United States. This defense was sustained in Jaked v. Board of Education of City of Albany, 113 Misc. 572, 185 N.Y.S. 88, 90. It was specifically said and held therein: "The duties of a board of education in the maintenance of a school building are governmental in their character. This board cannot be held liable as a corporation be-

cause of the failure or negligence of some subordinate or agent. In Donovan v. Board of Education, 85 N.Y. 117, it was held that the neglect in permitting an excavation in a school yard did not render the board liable, for the reason that the board was exercising a governmental function."

Other cases of like character arising in other states are given at length in 9 A.L.R. 911 et seq. and in Gold v. Mayor and City Council of Baltimore, 137 Md. 335, 112 A. 588, 14 A.L.R. 1389 et seq.

The rule is well stated in 43 C.J., 1167:

"Injuries caused by defects or negligence in or around a schoolhouse or yard may not be redressed by a civil action against the municipality, as the maintenance of schools is a public function; but for the maintenance of a nuisance on school property the municipality is liable.

"Aside from the rule stated above a municipal corporation is not liable for negligence in the condition or maintenance of school buildings and premises which are under the exclusive control of the board of education, and any liability which arises rests upon such board alone."

19 R.C.L., page 1124 is to the same effect.

It was held in Godfrey v. City of Shreveport, 6 La.App. 356, that: "A municipality in maintaining a public park is engaged in a governmental activity and is therefore not liable for injuries caused through negligent conditions therein."

The court held in Howard v. City of New Orleans, 159 La. 443, 105 So. 443, that:

"City, in appointing elevator operator for criminal court building, and in operating elevator through such operator, held engaged in discharging a public duty, and in exercising governmental function.

"City held not liable for injury resulting from negligence of its elevator operator in criminal court building, because such operation was a discharge of public duty, and exercise of governmental function."

The fact that the City, out of humanitarian impulses, paid the sanitarium bill for treating plaintiff's son did not operate as an admission of liability for the results of the accident; nor was having the depression filled soon after the accident, the existence of which no one connected with the City had any previous knowledge.

For the reasons herein assigned, the judgment appealed from is annulled, reversed and set aside, and plaintiff's suit is hereby dismissed at his cost.